PETER S. DOODY (Bar No. 127653)
Doody@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:  (619) 236-1551
Facsimile:   (619) 696-1410

SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
SILLS CUMMIS & GROSS P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
Telephone:  (212) 643-7000

Attorneys for Defendant LOWE'S HOME CENTERS, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, a Corporation; LOWE'S COMPANIES, INC., a Corporation; LF, LLC, a Corporation; and YANKON LIGHTING, INC., a Corporation,<br><br>Defendants. | Case No. 3:23-cv-01335-CAB-JLB<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS WILLFULNESS ALLEGATIONS AND REQUEST FOR ENHANCED DAMAGES**<br><br>**(JURY TRIAL DEMANDED)**<br><br>JUDGE:   THE HONORABLE CATHY ANN BENCIVENGO<br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

## PRELIMINARY STATEMENT

Plaintiff attempts to support its willfulness allegation first by referencing the unremarkable, "garden-variety" fact found in most patent cases, that it sent a pre-suit letter to LHC alleging infringement.  From this, Plaintiff concludes that LHC's

continued sales must have been an intentional infringement, and thus willful. But Plaintiff fails to appreciate the difference, clear from the case law, between intentionally continuing sales, and intentionally infringing. Particularly when viewed in light of the serious flaws in the infringement analysis apparent from the FAC, and from the response to the warning letter referenced in the FAC, the mere existence of the warning letter does not support a plausible allegation that LHC was intentionally infringing.

Plaintiff next relies on two foreign activities: (1) an all-Canadian meeting, without any involvement of LHC, that had no apparent connection to the American market or American patents; and (2) a sales order in China that has no mention of the Plaintiff or its products, no mention of LHC, and no mention of the American market. From these purely foreign activities, Plaintiff suggests the possibility that LHC might have somehow learned of the Plaintiff's patent or product and copied. These allegations are nothing but rank speculation, precluded by *Twombly* and its progeny.

Should Plaintiff's wild speculation find support in discovery, then Plaintiff can move to amend to try to add a willfulness claim then. But there is no basis for such an allegation in the FAC, and willfulness should be dismissed.

## I. THE STANDARD FOR PLEADING WILLFULNESS

The Plaintiff admitted the standard for pleading willfulness in the FAC: "to plead willful infringement, a plaintiff must generally state facts that show (1) the defendant knew, or should have known, of the patent; and (2) ***the defendant acted egregiously***." Dkt. #17, ¶ 53 (emphasis added). This admission by Plaintiff is consistent with Supreme Court precedent, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) (enhanced damages "are generally reserved for egregious cases of culpable behavior"), and with the five recent cases from this district presented in LHC's Opening Brief. Dkt. #19, at 3-4 ("Op. Br.").

In its Opposition, like its changing positions on infringement, Plaintiff now reverses course – apparently arguing that egregiousness is not required. Dkt. #20, at

1-2. While there is one case from this district that did not expressly require a showing of egregiousness, *Fate Therapeutics* (cited by LHC in Op. Br. at 5, n.2), Plaintiff does not dispute that the great majority of cases in this district require a showing of egregiousness.

LHC respectfully submits that the Court should follow the lead of the weight of authority in this district requiring egregiousness, but in the end it does not matter. That is, even cases that do not expressly require egregiousness still require a plausible case of "**deliberate or intentional infringement**." *Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, No. 22-cv-00676, 2023 WL 2756494, *9-10 (S.D. Cal. March 30, 2023) (emphasis added).

## II.     THE PLAINTIFF'S WARNING LETTER

### A. <u>Allegations of Infringement and Continued Sales Are Insufficient</u>

Plaintiff's willfulness claim is based on an allegation that it warned LHC of infringement ahead of the litigation, and LHC continued sales. Dkt. #17, ¶ 73. LHC does not dispute these facts. But there is a critical difference between intentionally **selling,** and intentionally **infringing**.

As the Federal Circuit and countless district courts have held, for a plausible willfulness allegation there must be something more than mere knowledge of the patent or allegations of infringement, and continued sales. *See, e.g., BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Research Organisation,* 28 F.4th 1247, 1275 (Fed. Cir. 2022) ("'knowledge of the asserted patent and evidence of infringement' . . . is not sufficient, for a finding of willfulness'"); *FluorDX LLC v. Quidel Corp.,* No. 19-CV-1998, 2020 WL 4464475, at *5 (S.D. Cal. Aug. 4, 2020) (pre-suit license negotiations, insufficient for willfulness allegation); *Arbmetrics LLC v. Dexcom, Inc.*, No. 18-cv-00134, 2019 WL 12473781, at *3 (S.D. Cal. Feb. 19, 2019) (dismissing willfulness allegation that showed pre-suit knowledge and continued sales as insufficient); *Genentech, Inc. v. Eli Lily & Co.*, No. 18-CV-1518, 2019 WL 4345788, at *5 (S.D. Cal. Sept. 12, 2019) ("Defendant's continuing manufacture and sales

cannot be the sole evidence to support a willful infringement claim."); *M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) ("Assuming for the sake of argument that the complaint put [defendant] on notice of the existing patents, and [defendant] continued its manufacturing of infringing products, this would simply be the kind of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness."); *Signify N. Am. Corp. v. Axis Lighting, Inc.*, No. 19cv5516, 2020 U.S. Dist. LEXIS 37899, at *6 (S.D.N.Y. Mar. 4, 2020) ("[A] plaintiff's pre-suit notice letter, on its own, does not support a finding of willful patent infringement.").

It is not the case, as Plaintiff appears to contend, that a patentee's allegation of infringement is automatically plausible evidence that the defendant **knew** it was infringing. Such a standard would turn the Supreme Court's *Halo* decision on its head – every patent plaintiff alleges infringement. If Plaintiff's suggestion was correct, virtually every patent defendant would be subject to willful infringement and treble damages risks simply because the patentee *alleged* infringement. This is not what the Supreme Court or Federal Circuit contemplate under any enunciated standard. *Halo Elecs.*, 136 S. Ct. at 1935 (finding that enhanced damages should not be "awarded in garden-variety cases").

To support a willfulness allegation, there must be something in the complaint that plausibly leads to the conclusion that the defendant had no reasonable basis to believe it was not infringing. *See, e.g., id.* at 1933 (discussing need for enhanced damages under Section 284 to address a defendant "**without any reason to suppose his conduct is arguably defensible**"; emphasis added); *BASF,* 28 F.4th at 1275; *FluorDX*, 2020 WL 4464475, at *5; *M & C Innovations,* 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018).[1]

---

[1] An example may help demonstrate the point. Suppose a patent plaintiff alleges pre-suit that the defendant's **red** product is infringing the patent that covers only

### B. The FAC and Response Letter Show No Willfulness

The facts in the FAC itself show that the infringement allegation is riddled with glaring holes. Plaintiff has waffled on its infringement allegations since its first letter, while it tries to fit a square peg into a round hole. Plaintiff's Opposition Brief, at pages 20-24, does not dispute that it has changed its thinking on infringement. Instead, Plaintiff tries to explain why a plastic is alleged to be a metal, why the internal strands of a single wire can be considered a plurality of wires, and why a plug connector is actually a twist connector. These arguments do not merit further discussion here, other than to say that they are completely inconsistent with the teachings of the '118 Patent, and even Plaintiff did not see it this way in its warning letter or in its original complaint.

Beyond the infringement issues, the point of novelty of the '118 Patent is nothing more than putting both retrofit and new construction clips on the same lighting fixture. *See, e.g.,* Dkt. #17-1, Ex. 1, 1:29-31 ("an apparatus for retrofit and new construction applications can reduce inventory carried by lighting distributors."). As the response to the cease-and-desist letter showed, both types of clips were known in the prior art – the patent could not survive an obviousness challenge. Dkt. #17, ¶ 73; Dkt. #19-4 (Ex. B to LHC's Opening Brief).

Plaintiff is correct that LHC itself did not address the response letter to Plaintiff, and the Opening Brief and declaration should have phrased this more clearly. This is a distinction without a difference, however, because the letter was expressly provided to address the allegation that the Lowe's products infringed (Ex. B to LHC's Opening Brief, first paragraph), and it was copied to Lowe's personnel at the time (pre-suit). *See*, Opp. Exs. E and F. Plaintiff also argues that the letter itself does not identify

---

**blue** products. Under Plaintiff's theory, the pre-suit allegation of infringement is all that is required to plausibly allege willfulness. But, like the facts here, there is an apparent and reasonable basis for the defendant to believe there is no infringement.

every element of the claims. *Id*. But the letter demonstrated the obviousness of the alleged point of novelty of the '118 Patent. Plaintiff does not dispute that the other claim elements were old and common in the prior art, nor does Plaintiff dispute that other elements are shown in the figures of the prior art attached to the response letter.[2]

This situation -- a patentee alleging infringement, but facts showing obvious and reasonable reasons why a defendant would believe otherwise -- simply cannot support a plausible willfulness allegation, no matter what standard this Court applies. There is nothing from which a factfinder could plausibly believe that LHC **believed** it was infringing a valid patent, and certainly nothing even remotely indicating egregiousness.

### III. THE COPYING ALLEGATION IS RANK SPECULATION

In an effort to bolster its willfulness allegation, Plaintiff tries to create a copying allegation, citing to the presentation made in Canada to LHC's Canadian sister companies, and to sales orders in China. The Canadian presentation, however, had nothing to do with the American market, and there are no facts connecting LHC to this presentation in any way. Even if it had been directed to the United States, the phrase "Patent Pending" contained in the presentation says nothing about knowledge

---

[2] Plaintiff's Declaration in Support and Exhibits A-F attached thereto refer to improper allegations and documents that should not be considered on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) a Court can rely on "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice"). While the FAC references the letters being sent generally, the purported details in the Declaration and Exhibits A-F do not appear to be referenced or attached to the FAC, nor has Plaintiff made a request that the Court take judicial notice of this information.

Plaintiff's requests for judicial notice are also flawed to the extent Plaintiff presents them as "proof of" various things – judicial notice is limited solely for the existence and content of these documents. *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F.Supp.3d 139, 146 (N.D. Cal. 2020).

of a patent. *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("A 'patent pending' notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed."). As for the Chinese sales orders, they do not identify the Plaintiff or its patents, they have no apparent connection to the American market, and there are no facts connecting LHC to those orders. Indeed, both the Canadian presentation and the Chinese sales orders are related to sourcing of products outside of the United States – but there is no indication in the FAC that LHC (a retailer) is involved at all in sourcing of those products for import into the United States.

At pages 10-12 of its Opposition, Plaintiff advances a string of confusing, speculative, and far-fetched arguments about why LHC may have had access to the Canadian presentation. Plaintiff's arguments include (1) the accused products are sold in the United States; (2) one of the recipients, Ellaine Pellerin, had a role at Canadian company RONA related to "procurement for in-store deployment" (no mention of the United States); and (3) "it remains unclear which Lowe's subsidiary was employing [the other attendee Philippe] Ciot." None of Plaintiff's arguments even remotely connect LHC to the Canadian presentation, however – they are pure speculation. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"); *Levy v. FCI Lender Servs.*, No. 18cv2725, 2020 U.S. Dist. LEXIS 60191, at *20-21 (S.D. Cal. April 6, 2020) (plaintiff "must allege facts sufficient to raise a right to relief that rises above the level of mere speculation").

At pages 17-20 of its Opposition, Plaintiff next argues that the Chinese sales orders support its willfulness allegations. Plaintiff again tries to tie the sales orders to LHC by arguing that the accused products are sold in the United States, and that LHC's parent company is headquartered in the United States. Dkt. #20, at 18. In doing so, however, Plaintiff conflates the accused products with the products being purchased under the cited sales orders. The sales orders are not directed to the accused

products. As the FAC concedes, the accused products sold by LHC are manufactured by Zhejiang Yankon Group Co., Ltd. ("Yankon") (Dkt. #17, ¶ 59), whereas the sales orders are allegedly directed to Plaintiff's own lighting products from "Plaintiff's approved manufacturer" (*id.*, ¶ 30). Nothing in the FAC or Plaintiff's Opposition Brief ties sourcing of the accused products supplied by Yankon to the sales orders cited by Plaintiff. Nor does the FAC or Plaintiff's Opposition Brief allege that LHC sources any of the "Plaintiff's lighting products" referenced in those sales orders. The fact that LHC has a parent headquartered in the United States is completely irrelevant – that parent company is yet another, separate company.

Moreover, even if LHC had been the "Lowes" referenced in these sales orders, that would do nothing to support willfulness because these documents have no mention of the Plaintiff or its intellectual property – there would be no way to connect these products to the Plaintiff or its patents. Again, Plaintiff's arguments are nothing more than rank speculation – speculation that the Chinese sales orders were connected with America or the American market; speculation that LHC had anything to do with them; speculation that LHC would have seen the products subject to the sales order; speculation that any entity could see a connection between the sales orders and the Plaintiff; and speculation that something was copied.

Plaintiff's argument about these sales orders also suffers from a more fundamental defect – what did the products subject to the sales order look like, and did they even practice the alleged invention of the '118 Patent? Moreover, even if LHC had been involved with these sales orders, even if LHC saw those products, and even if those products practiced the alleged invention of the '118 Patent, the FAC demonstrates they were not copied. Rather, the LHC accused products are quite different, as they lack a metal housing, they lack a plurality of output wires from the junction box, and they lack a twist connector. *See* Op. Br. at 11-14.

The bottom line on Plaintiff's copying allegation is that there are no facts supporting any plausible allegation that LHC had any knowledge of the '118 Patent,

its application, or the Plaintiff's products, before the May 2023 cease-and-desist letter (when LHC was already selling the accused products); and there is no evidence that anything was copied. Any allegation in the FAC regarding LHC's purported copying is nothing but wild speculation. *See Twombly*, 550 U.S. at 555; *Levy*, 2020 U.S. Dist. LEXIS 60191, at *20-21.

## CONCLUSION

For the foregoing reasons, LHC's motion to dismiss the willfulness allegations and request for enhanced damages should be granted, together with such other and further relief which the Court deems just and proper.

Dated: December 1, 2023          Respectfully submitted,

HIGGS FLETCHER & MACK LLP


By: */s/ Peter S. Doody*
PETER S. DOODY
SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
Attorneys for Defendant LOWE'S HOME CENTERS, LLC