PETER S. DOODY (Bar No. 127653)
Doody@higgslaw.com
KATHRYN CALLAGHAN (Bar No. 340145)
callaghank@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:   (619) 236-1551
Facsimile:    (619) 696-1410

SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
SILLS CUMMIS & GROSS P.C.
101 Park Avenue
New York, NY 10178
Telephone: (212) 643-7000

Attorneys for Defendant LOWE'S HOME
CENTERS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a corporation,<br><br>    Plaintiff,<br><br>   v.<br><br>LOWE'S HOME CENTERS, LLC, A CORPORATION,<br><br>    Defendant. | Case No. 3:23-cv-01335-CAB-JLB<br><br>**DEFENDANT'S *AMENDED* RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>JUDGE: THE HONORABLE CATHY ANN BENCIVENGO |

HIGGS FLETCHER &
MACK LLP

# **TABLE OF CONTENTS**

I.    METAL HOUSING .................................................................................. 1

II.   JUNCTION BOX COMPRISES A PLURALITY OF OUTPUT WIRES .......... 5

III.  TWIST CONNECTOR ............................................................................ 5

IV.  THE PREAMBLE AND TRANSITION ...................................................... 6

V.   CLAIM 4: ELECTRICAL SYSTEMS, CLIPS, AND ACCESSORIES ............ 8

VI.  CONCLUSION ..................................................................................... 9

# TABLE OF AUTHORITIES

### CASES

*accord E-System Design, Inc. v. Mentor Graphics Corp.*,
No. 4:17-cv-682, 2018 U.S. Dist. LEXIS 211747 (E.D. Tex. Dec. 17, 2018).----- 4

*American Medical Systems v. Biolitec*,
618 F.3d 1354 (Fed. Cir. 2010)------------------------------------------------- 7

*Atlantic Alternatives, Inc. v. Prince Manufacturing, Inc.*,
73 F.3d 1573 (Fed. Cir. 1996) ------------------------------------------------- 3

*Baxter Int'l v. McGaw, Inc.*,
No. 95 C 2723, 1996 U.S. Dist. LEXIS 1527 (N.D. Ill. Feb. 8, 1996) ------------- 3

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*,
616 F.3d 1249 (Fed. Cir. 2010);------------------------------------------------- 1

*Bracco Diagnostics, Inc. v. Maia Pharms., Inc.*,
839 F. App'x 479 (Fed. Cir. 2020)--------------------------------------------- 3

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001)-------------------------------------------- 6, 7

*Caluori v. One World Techs., Inc.*,
No. CV 07-2035, 2010 U.S. Dist. LEXIS 127073 (C.D. Cal. Nov. 12, 2010) ----- 2

*Catalina Market. Intern. v. Coolsavings.com*,
289 F.3d 801 (Fed. Cir. 2002) ------------------------------------------------- 7

*CIVIX-DDI, L.L.C. v. Cellco P'ship*,
387 F. Supp. 2d 869 (N.D. Ill. 2005) ------------------------------------------- 7

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
958 F.3d 1348 (Fed. Cir. 2020)------------------------------------------------- 7

*Dunnhumby USA, LLC v. emnos USA Corp.*,
No. 13-cv-0399, 2015 U.S. Dist. LEXIS 42474 (N.D. Ill. April 1, 2015) ---------- 4

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996). ------------------------------------------------- 1

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*,
93 F.3d 1572 (Fed. Cir 1996)------------------------------------------------- 3

*Exmark Mfg. Co. v. Briggs & Stratton Corp.*,
830 F. App'x 305 (Fed. Cir. 2020)--------------------------------------------- 1

*Gart v. Logitech, Inc.*,
254 F. Supp. 2d 1119 (C.D. Cal. 2003) ----------------------------------------- 2

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021)------------------------------------------------- 1

*K-2 Corp. v. Salomon S.A.*,
  191 F.3d 1356 (Fed. Cir. 1999).------------------------------------------------------------ 7

*L&P Prop. v. JTM, LLC*,
  578 F. Supp. 2d 318 (D. Mass. 2008)------------------------------------------------- 2

*Novo Indus., L.P. v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed. Cir. 2003)------------------------------------------------------- 8

*Panasonic Corp. v. Magna Int'l Inc.*,
  No. 6-21-CV-319, 2022 U.S. Dist. LEXIS 37357 (W.D. Tex. Mar. 3, 2022)------ 7

*Shoes by Firebug LLC v. Stride Rite Childresn's Grp., LLC*,
  962 F.3d 1362 (Fed. Cir. 2020)------------------------------------------------------- 6

*Takeda Pharm. Co. v. Zydus Pharms., USA, Inc.*,
  743 F.3d 1365 ------------------------------------------------------------------------------ 3

*Tomtom, Inc. v. Adolph*,
  790 F.3d 1315 (Fed. Cir. 2015)------------------------------------------------------- 7

**STATUTES**

35 U.S.C. § 112------------------------------------------------------------------------------- 3

**REGULATIONS**

37 CFR 1.84(r)------------------------------------------------------------------------------- 2

## I.    **METAL HOUSING**

Plaintiff argues that, despite the patent describing and claiming all the various components of the lighting fixture separately, the "housing" is the "complete fixture" – every part of the electrical system, every new construction clip, every retrofit clip, every accessory, the junction box, connecting posts, connectors, wires, and anything else anywhere on the interior, exterior, or attached to the apparatus. *See* Dkt. #49 (Plaintiff's Opening Brief), at 5 (proposing interpretation of "metal housing" as "a metal structure ***that includes a complete fixture (112) as a constituent part***"; emphasis added); Plaintiff's Summary Judgment Opposition, Dkt. #45, at 25; Plaintiff's Infringement Contentions, Stimpson Decl., Ex. B, at 8. Indeed, the only part of the fixture that Plaintiff does ***not*** rely upon as part of the housing, is the actual housing.  Dkt. #45, at 26 ("Plaintiff's primary infringement contentions do not rely on the white wafer piece . . . .").

Plaintiff's argument turns established patent law on its head.  <u>First</u>, it is contrary to Federal Circuit law for Plaintiff to replace the very specific part recited in the claim (a "housing"), with entirely generic language (any "structure").  *Exmark Mfg. Co. v. Briggs & Stratton Corp.*, 830 F. App'x 305, 310 (Fed. Cir. 2020) ("claim language should not be treated as meaningless."); *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 809–10 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.'").  <u>Second</u>, Federal Circuit law is clear that, when patents describe and claim components as separate elements, they ***are*** separate elements. *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010); *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996).  <u>Third</u>, Plaintiff's interpretation is directly contrary to the entire specification, which repeatedly, consistently, and specifically labels the housing 108 ***only*** as the exact same component as the Accused product's (plastic) housing.  *See* Stimpson Decl., Ex. A,

Figs. 2A, 8A, 8B; *see* 37 CFR 1.84(q) and (r) (lines directed to a specific part indicate that specific feature, in contrast to "a freestanding arrow" which would indicate an entire section). <u>Fourth</u>, every dictionary definition, including Plaintiff's dictionary definitions, supports only the "housing" construction of LHC. Stimpson Decl., Ex. C (a "case or enclosure to cover and protect a structure or mechanical device"); Dkt. #45-1 at 15, 26 (Plaintiff's dictionaries: "shelter" or "something that covers and protects"). And <u>fifth</u>, apparently every court to have construed the term "housing" has done so consistently with LHC's proposed construction. Dkt. #48 (LHC Opening Brief), at 11-12 (citing multiple cases); *see also Gart v. Logitech, Inc.*, 254 F. Supp. 2d 1119, 1124-25 (C.D. Cal. 2003) (housing "contains a part of the mechanism"); *L&P Prop. v. JTM, LLC*, 578 F. Supp. 2d 318, 331 (D. Mass. 2008) (housing is "something that covers, protects, or supports"); *Caluori v. One World Techs., Inc.*, No. CV 07-2035, 2010 U.S. Dist. LEXIS 127073, at *17 (C.D. Cal. Nov. 12, 2010) ("the Court interprets 'structural housing' to mean 'a case that encloses one or more components").

Plaintiff's convoluted, non-sensical argument relies heavily on the vague language after the "metal housing" language – "to embody a complete fixture." *See, e.g.*, Plaintiff's Opening Brief at 3. But this language does not support Plaintiff's interpretation – it says the metal housing ***embodies*** the entire fixture, not that it ***is*** the entire fixture. Plaintiff ignores the only parts of the specification that shed light on this language – the housing acts as a base for other components. *See* Stimpson Decl., Ex. A, 4:25–26 ("metal housing (108) is a base of the complete fixture"); all Figures (retrofit clips, new construction clips, junction box, wiring, etc., are all attached to housing 108. Dictionary definitions of "embody" also support the view that this language just means that the housing provides the base by which the other components are incorporated into the fixture. *See, e.g.*, Stimpson Reply Decl., Ex. J ("to cause to become a body or part of a body: INCORPORATE"); Ex. K ("To

1  collect into one whole; incorporate"); Ex. L ("To make part of a system or whole").

2  Plaintiff's dictionaries are consistent. *See also* Dkt. #45-1 at 13 ("to cause to become

3  … a part of a body or system").

4       At bottom, this "to embody a complete fixture" language is vague, and even if

5  Plaintiff's proposed interpretation was not wrong for so many other reasons, the

6  Federal Circuit is clear that such vague language cannot be a basis for construing

7  other language. *Bracco Diagnostics, Inc. v. Maia Pharms., Inc.*, 839 F. App'x 479,

8  489 (Fed. Cir. 2020) (rejecting proposed interpretation based on "specification's

9  ambiguous language"); *see also Baxter Int'l v. McGaw, Inc.*, No. 95 C 2723, 1996

10  U.S. Dist. LEXIS 1527, at *3 (N.D. Ill. Feb. 8, 1996) ("ambiguous language and

11  sloppy drafting" unhelpful in claim construction). What is more, Plaintiff drafted the

12  claim language and so should not be allowed now to try to twist this ambiguity to

13  support its wildly overbroad interpretation of the "metal housing" language. 35

14  U.S.C. § 112; *see also, e.g., Takeda Pharm. Co. v. Zydus Pharms., USA, Inc.*, 743

15  F.3d 1359, 1365 (Fed. Cir. 2014) (narrower interpretations better serve "the notice

16  function" of claims); *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 93

17  F.3d 1572, 1581 (Fed. Cir 1996) ("to the extent the claim is ambiguous, a narrow

18  reading which excludes the ambiguously covered subject matter must be adopted");

19  *Atlantic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1581 (Fed.

20  Cir. 1996) (broad interpretation proposed by plaintiff "would undermine the fair

21  notice function of the requirement that the patentee distinctly claim the subject

22  matter disclosed in the patent . . .").

23       Plaintiff tries various other arguments to dispute LHC's common sense

24  interpretation.  It tries to set up a straw man, for example, by misrepresenting LHC's

25  proposed interpretation.  Plaintiff's Opening Brief at 6 ("Defendant's proposed

26  construction *cannot* be considered valid because it requires that the 'clips' be

27  'enclose[d]' by something else").  This argument is specious, as nothing in LHC's

28

1    proposed interpretation has any such requirement.  Plaintiff also argues that element

2    108 is actually directed to multiple elements, including the retrofit clips. *Id.* at 8

3    ("the arrow line near element '108' is directed to an entire section of FIG. 2a that

4    includes multiple elements, and including the retrofit clips…").  The Court need

5    only review Figure 2A to see that this argument is bunk; *see also* Figures 1 and 8B

6    (separately labelling retrofit clips as element 102).

7        At pages 8-9, Plaintiff tries to find support in the provisional application.  But

8    the provisional application does not help Plaintiff.  The housing is the primary

9    element of the figures labelled "housing" in that application, the other figures

10   identify the clips separately, and that application referred to element 4 (now element

11   108) as the "metal body."  Dkt. #45-1 at 43-47.  Like the specification of the issued

12   patent, it confirms that this "metal body" is separate and distinct from the other

13   components.  *Id.* at 46-47 ("The invention would be made by die casting a metal

14   body (4).  That is the base of the complete fixture containing two connecting posts

15   (3), to attach new construction clips (2) and three screw holes (5), at 120 degrees, to

16   accept the retrofit clip (1).").  Moreover, the provisional application is only ***extrinsic***

17   evidence, since it was not incorporated by reference, or relied on by the examiner.

18   *Dunnhumby USA, LLC v. emnos USA Corp*., No. 13-cv-0399, 2015 U.S. Dist.

19   LEXIS 42474, at *29-30 (N.D. Ill. April 1, 2015) ("the case law implies that a

20   provisional application becomes intrinsic evidence where the prosecution history

21   incorporates it by reference or where the examiner considered it during

22   examination"); *accord E-System Design, Inc. v. Mentor Graphics Corp*., No. 4:17-

23   cv-682, 2018 U.S. Dist. LEXIS 211747, at *44-45 (E.D. Tex. Dec. 17, 2018).

24       For all the reasons provided herein, and in LHC's Opening Brief, "metal

25   housing" should be construed as "a casing that encloses and protects other parts and

26   consists predominantly of metallic elements."

27

28

## II.    <u>JUNCTION BOX COMPRISES A PLURALITY OF OUTPUT WIRES</u>

Plaintiff's analysis fails to properly account for the two different phrases in the claims – at 6:19–20 ("a junction box ***to hold*** a plurality of connection wirings"), and at 6:20–21 ("the junction box (116) ***comprises*** a plurality of output wires"). Plaintiff conflates the two phrases, as if they were completely redundant and saying the same thing. But they are not addressing the same thing, and Plaintiff ascribes no meaning at all to the "comprises" language.

Nor does Plaintiff ascribe any meaning to the word "output" in the expression "output wires." Plaintiff's interpretation of "output wire" instead relies on the misguided notion that any wire "extending out" of the junction box is an "output wire." But an "output" wire is not any wire that extends out of a junction box – it is a specific type of wire that carries power to other components. *See* LHC Opening Brief, at 14-15.

Plaintiff's other arguments are not persuasive. At page 14, Plaintiff again seeks support from the extrinsic provisional application. Plaintiff's Opening Brief at 14. But that application only supports LHC's interpretation. Dkt. #45-1 at 45 (referring to "the junction box (8) output wire" – it is a wire ***of*** the junction box, not a free wire). Next, at page 15, Plaintiff relies on a decision by the Central District of California on this patent. Plaintiff's Opening Brief at 15. But that decision only denied a motion to dismiss and did not purport to interpret anything. *See id.* at 20 (basing the decision "only on a review of the materials that can be considered on a motion to dismiss").

## III.    <u>TWIST CONNECTOR</u>

Unable to find any definition of "twist connector" supporting its bizarre interpretation, Plaintiff cites definitions of the word "twist" alone, and concludes that "the term 'twist connector,' ***in a vacuum***, can refer to something that connects two or more things that were 'formed by twisting or winding.'" *Id*. at 16 (emphasis

added).  But courts do not conduct claim constructions in a vacuum.  They interpret claims in view of the intrinsic and extrinsic evidence – and in the real world.

In the real world, a twist connector is a common, well-known type of connector, that is twisted on to wires.  *See, e.g.,* Bretschneider Decl. ¶¶ 21–22. Plaintiff's attempt to distinguish "twist-on" connectors from "twist" connectors, at pages 17-18 of its Brief, is frivolous, and unsupported by any intrinsic or extrinsic evidence.  LHC submitted numerous documents showing they are exactly the same thing.  Stimpson Decl., Ex. D ("Twist On Wire Connectors can also be called . . . twist connectors . . .."), Exs. E–H (all showing "twist connectors").[1]

The Central District of California ("Central District Court") agrees with LHC, as quoted on page 20 of Plaintiff's brief (Central District Court: "these [twist connector] structures connect the relevant two wires and are ***applied by twisting***"; emphasis added). Plaintiff's Opening Brief at 20. Thus, the Central District Court fully agrees with LHC, and with Plaintiff's first proposed interpretation as "a connector ***that relies on the act of twisting to make a connection***." Stimpson Decl., Ex. I, at 10 (emphasis added).  Plaintiff was correct with its first proposed construction, as is the Central District Court, as is Dr. Bretschneider – twist connectors make the connection by twisting.

## IV.    THE PREAMBLE AND TRANSITION

While Plaintiff is correct that the preamble provides antecedent bases for terms in the claim, that alone is not sufficient for a preamble to be limiting, as Plaintiff's cited case confirms. *See Shoes by Firebug LLC v. Stride Rite Childresn's Grp., LLC,* 962 F.3d 1362, 1368 (Fed. Cir. 2020) ("antecedent basis alone is not determinative of whether a preamble is limiting…"); *see also Bristol-Myers Squibb*

---

[1] Plaintiff attempts to confuse this issue by periodically referencing the "wire nuts" – this is a needless distraction.  While wire nuts and twist connectors are different names for the same thing, LHC has no objection to the Court modifying the LHC proposed construction to remove the language about wire nuts – the critical point is only that twist connectors are "twisted onto the wire ends."

*Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368 (Fed. Cir. 2001) (preamble did not limit the claim even though the body of the claim relied on a term for antecedent basis); *CIVIX-DDI, L.L.C. v. Cellco P'ship*, 387 F. Supp. 2d 869, 890 (N.D. Ill. 2005) (same); *Panasonic Corp. v. Magna Int'l Inc.*, No. 6-21-CV-319, 2022 U.S. Dist. LEXIS 37357, at *58-59 (W.D. Tex. Mar. 3, 2022) (same).  Here, the mere fact of antecedents in the preamble is not sufficient to overcome the general rule that preambles are not limiting.  *American Medical Systems v. Biolitec*, 618 F.3d 1354, 1358-59 (Fed. Cir. 2010); *see also Tomtom, Inc. v. Adolph*, 790 F.3d 1315, 1324 (Fed. Cir. 2015) ("error for the district court to use an antecedent basis rationale to justify converting this independent part of the preamble into a new claim limitation.").

The body of claim 1 describes a structurally complete invention.  Plaintiff is trying to read into the body of the claim the "detachable" requirement, but there is nothing in the claim about that feature; nor is that feature, or anything else in the preamble, "essential to understand limitations or terms in the claim body."  *Catalina Market. Intern. v. Coolsavings.com*, 289 F.3d 801, 810 (Fed. Cir. 2002).  This is true despite the antecedent basis, and indeed it would be true even if there was other language in this preamble that was limiting.  *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1355 (Fed. Cir. 2020) ("A conclusion that some preamble language is limiting does not imply that other preamble language, or the entire preamble, is limiting.").  Even if the preamble was a limitation, it has a plain and ordinary meaning, and Plaintiff's attempt to rewrite it should be rejected.  *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).

As for the transition, "the apparatus comprises," Plaintiff does not dispute that it requires that all claim elements must be found on the same, assembled apparatus. Accordingly, that issue is not disputed.

## V.    CLAIM 4: ELECTRICAL SYSTEMS, CLIPS, AND ACCESSORIES

Plaintiff identifies no issue justifying construction of this phrase, nor does Plaintiff explain why it does not simply mean what it says.  Instead, Plaintiff completely rewrites this claim, introducing concepts found nowhere in the claim language, such as a requirement for "groups" of "electrical items" (no longer "electrical systems"), and those "items" all must be "interdependent." Plaintiff's Opening Brief at 24. Plaintiff also replaces "clips" by limiting this to the same retrofit and new construction clips that were already recited in the independent claim; and it requires that "accessories" be "electrical" accessories when there is no such requirement in the claim. *Id*.

Plaintiff admits, at pages 23-24, that the construction is sought only to try to assist Plaintiff to find more "metal structures" for the "metal housing" element. *Id*. at 23-24. It is a pointless exercise – the Court should decline any interpretation, or simply reject Plaintiff's attempt to rewrite the claim and find this meaning plain and ordinary.[2]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Section IV of Plaintiff's Brief addresses the priority date.  While this has nothing to do with claim construction, we note in passing that Plaintiff is not entitled to the priority date for this case. *Novo Indus., L.P. v. Micro Molds Corp*., 350 F.3d 1348, 1356 (Fed. Cir. 2003) (a "certificate of correction is only effective for causes of action arising after it was issued.").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, LHC respectfully requests that the Court adopt LHC's proposed constructions and reject those proposed by Plaintiff.

Respectfully submitted,

Dated:  August 27, 2024

HIGGS FLETCHER & MACK LLP


By:  */s/ Peter S. Doody*
PETER S. DOODY

SILLS CUMMIS & GROSS P.C.
Scott D. Stimpson (Pro Hac Vice)
Katherine M. Lieb (Pro Hac Vice)
Linxuan Yan (Pro Hac Vice)

Attorneys for Defendant LOWE'S HOME CENTERS, LLC