UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br><br>Defendant. | Case No.: 3:23-cv-01335-CAB-JLB<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**<br><br>[ECF No. 34] |

Plaintiff DS Advanced Enterprises, LTD. ("DS Advanced") filed this lawsuit against Defendant Lowe's Home Centers, LLC. ("Lowe's HC") alleging infringement of U.S. Patent No. 11,054,118 ('118 Patent). Lowe's HC moves for summary judgment of noninfringement. [ECF No. 34.] DS Advanced filed an opposition. [ECF No. 45.] Lowe's HC filed a reply. [ECF No. 47.] The Court held argument on September 26, 2024. Central to Defendant's motion is the construction of the limitation "metal housing." For the reasons explained further below, since the Accused Products contain only plastic housings, and the doctrine of equivalents does not apply, Lowe's HC's motion is **GRANTED.**

## I.     PATENT AT ISSUE AND ACCUSED PRODUCTS

DS Advanced identifies itself as a designer and seller of lighting fixtures worldwide. DS Advanced filed an amended complaint ("Complaint") on Oct. 16, 2023, alleging

infringement of the '118 Patent. The Patent discloses "an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing." [Patent No. '118, ECF No. 34-5 at 2.] DS Advanced claims infringement for all five claims of the '118 Patent. [*See* Compl. ¶¶ 15–45.]

The accused Lowe's HC products are recessed lighting products designated as Utilitech Items #5041630, #5041631, #5041632, #5041633, and #5041634 (collectively, the "Accused Products"). [Compl. ¶¶ 75–110.] The Accused Products are largely similar and for purposes of this motion, any differences between them are irrelevant.

Claim 1, the only independent claim of the '118 patent, claims:

> An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:
> a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);
> a plurality of new construction clips (104);
> a plurality of connection posts (106) to hold the new construction clips (104);
> a metal housing (108) to embody a complete fixture (112);
> a junction box (116) to hold a plurality of connection wirings, where the junction box (116) comprises a plurality of output wires; and
> a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108), wherein the retrofit clips (102) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (112) inside, wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present.

[Patent No. '118, Ex. 34-5, Col 6:9-28.]

Employing an unusual format, at least in this Court's experience, the claim itself incorporates specific references to the structure disclosed in the specification for each claim limitation, e.g., a metal housing (108), a junction box (116), etc.

///
///
///



[Patent No. '118, Ex. 34-5, Fig. 8A.]

Defendant's motion asserts that summary judgment is proper because certain claim limitations are absent from each of the Accused Products, specifically: (1) a metal housing (108); (2) the junction box (116); and (3) a twist connector (118).

## II.   LEGAL STANDARD

The usual standard for summary judgment applies to this case.  Summary judgment is authorized if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The nonmoving party must come forward with specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

A patent infringement analysis involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  Claim construction is a matter of law reserved for the court. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "Disputes concerning the meaning of claims do not preclude summary judgment, because the resolution of those disputes is part of the process of claim interpretation, a question of law." *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998).

To prove direct infringement, "the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally

or under the doctrine of equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).

Literal infringement requires that each element in the asserted claim be literally present in the accused device. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). If a reasonable jury cannot find that every limitation or its equivalent of a properly construed claim is found in the accused product, the court may enter summary judgment of noninfringement. *Medgraph Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016).

### III.   DISCUSSION

Claim construction requires a review of the patent's intrinsic evidence and, when appropriate, extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). "Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, specification, and prosecution history." *Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022). Claims must be read in view of the specification of which they are a part. The specification is always highly relevant to the claim construction. *Phillips*, 415 F.3d at 1315. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Based on the Court's construction of the claim limitation "metal housing (108)" and the undisputed fact that the corresponding aspect of the accused devices is a plastic housing, the Court finds it unnecessary to go beyond the absence of this limitation to enter a judgment of noninfringement for Defendant Lowe's HC.

**A. Construction of Metal Housing (108)**

The plain language of the claim limitation "metal housing (108)" unambiguously requires that this housing element of the apparatus be comprised of metal. Although the parties banter somewhat over a definition of metal, neither contend that in the context of this patent metal has a special meaning to a person of skill in the art.

The Court finds that the claim requires this "housing" limitation of the apparatus be made of a scientifically recognized metal substance. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Arlington Industries, Inc. v. Bridgeport Fittings*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (claim recited a "spring metal adaptor," consistent with the ordinary and customary meaning of the words; this term imposed the limitation that the adapter must be made of spring metal).

The construction dispute focuses more on the interpretation of the claim limitation "the metal housing (108) to embody the complete fixture (112)." [Patent No. '118, Ex. 34-5, Col. 6:88.] The Court is guided by the maxim that "[c]laims mean precisely what they say." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007). On its face, Claim 1 makes clear that the metal housing (108) is just one part of the overall apparatus. [Patent No. '118, Ex. 34-5, Col. 6:9-28.]

Claim 1 describes the metal housing (108) as a component of the apparatus designed to embody the complete fixture (112). The complete fixture includes a plurality of electrical systems, clips, and accessories. [*Id.*, Col. 4:2-4.] The metal housing (108) is attached to the output wires of the junction box (116) by a twist connector (118), both separately identified components of the claimed apparatus. [*Id.*, Fig. 7, Col. 4:9-15.] Retrofit clips (102), another separate component, are attached to the metal housing (108) to provide a friction fit inside a recessed lighting fixture housing to secure the complete fixture (112) inside. [*Id.*, Figs. 7 and 8B.]

The metal housing (108) is a particular structure to which various other claim components are attached and it contains, i.e., encases, the complete fixture. "Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).

DS Advanced contends that the phrase "to embody" found in the claim limitation "the metal housing (108) to embody the complete fixture (112)" implies that the metal housing is somehow analogous to the entire fixture, rather than a component that encases (houses) the parts of the complete fixture.  Plaintiff argues that the claim should be construed such that this metal housing component (108) is metal if other component parts of the complete fixture, such as the various clips, wires, and junction box, are metal since the housing, regardless of whether that individual part is made of metal, contains the complete fixture.

The Court is not persuaded by this interpretation of the claim.  It directly contradicts the plain language of the claim that provides that the metal housing (108) is a component of the complete fixture (112), among numerous individually identified components.  The specification describes the metal housing (108) as the base of the complete fixture (112). [Patent No. '118, Ex. 34-5, at Col. 4:25-26.]   Different terms are presumed to mean different things. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Moreover, the patentee included in the claim itself the specification's parenthetical references for each component limitation.  While this unusual format of claiming the invention may not limit the claimed invention to only the figures as illustrated in the specification, the inclusion of these references for each component part of the claimed apparatus informs the construction of each limitation—and therefore what constitutes the metal housing element.   DS Advanced's claim construction argument that the metal housing (108) is the embodiment of the complete fixture (112) is contrary to the claim

language. These are separately identified limitations, and the housing is disclosed to embody, i.e., encase, the complete fixture and must be formed of metal.

The Court construes the "metal housing (108)" limitation of the '118 Patent based on the plain language of the claim and in accordance with the descriptions in the specification and its figures as a "casing or enclosure made of a scientifically recognized metal substance."

### B. Summary Judgment for Lowes is Warranted: There is No Dispute of Fact as to Whether the Accused Product Contains a "Metal Housing (108)"

Having construed the claim limitation "metal housing (108)," the Court is satisfied that there is no dispute of material fact as to whether the Accused Product infringes the '118 Patent. The summary judgment evidence is clear that the Accused Products have a housing made of plastic. [ECF No. 48-1 ("Bretschneider Decl.") ¶¶ 12-24.] DS Advanced offers no evidence to rebut Dr. Eric Bretschneider's analysis and conclusion related to the plastic housing, apart from its somewhat tortured proposed claim construction of "metal housing" which the Court rejects. The straightforward visual confirmation of the plastic housing from the physical sample submitted by Lowe's HC as part of its motion leaves no debate on the issue. [ECF No. 34-6.] As the Accused Products do not contain a metal housing as construed by the Court, there can be no literal infringement, and summary judgment for Lowe's HC is warranted unless the doctrine of equivalents applies. *See Medtronic, Inc.*, 843 F.3d at 949.

### C. The Doctrine of Equivalents is Barred by the Disclosure-Dedication Doctrine

A lack of literal infringement does not end the infringement inquiry as infringement may exist under the doctrine of equivalents. The doctrine of equivalents allows, in some circumstances, a claim element to be met by its substantial equivalent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732–33 (2002) (citing *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605 (1950)).

In this case, "the disclosure-dedication doctrine bars application of the doctrine of equivalents." *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed.

Cir. 2020). The doctrine states that "when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates the unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). The application of the disclosure-dedication rule is a question of law for the Court. *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1364 (Fed. Cir. 2012).

The '118 Patent itself distinguishes between the metal housing (108) or plastic housing. [*See, e.g.*, '118 Patent, Ex. 34-5, Col. 4:34-36, 41-52.] Yet "plastic housing" is not the subject of any of the '118 Patent's claims. Given that the Patent disclosed plastic housings, but did not claim them, the "disclosure-dedication" rule applies: the plastic housings are dedicated to the public and cannot be captured under the doctrine of equivalents. *See PCS Computer Products, Inc. v. Foxconn International, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004) ("We agree with the district court, however, that the specific disclosure that '[o]ther prior art devices use molded plastic and/or metal parts that must be cast or forged which again are more expensive metal forming operations,' . . . dedicated the alternative use of plastic parts to the public."). Accordingly, there is no infringement by equivalents.

## IV. CONCLUSION

Defendant's motion for summary judgment of noninfringement of the '118 patent is **GRANTED**. All pending motions and deadlines are vacated, except for Defendant's Motion for Sanctions [ECF No. 59] pending before the magistrate judge for determination. Final judgment will be entered upon determination of that motion.

It is **SO ORDERED**.

Dated:  September 30, 2024

Hon. Cathy Ann Bencivengo
United States District Judge