PATRICK CUMMINS (SBN: 294400)
Patrick@CumminsIP.com
Cummins IP PLLC
3426 Pepperhill Rd.
Lexington, KY 40502
Telephone: 502.445.9880
*Counsel for Plaintiff,*
  *DS Advanced Enterprises, Ltd.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a corporation,<br><br>          *Plaintiff,*<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, a corporation,<br><br>          *Defendant.* | Case No.: 3:23-cv-01335-CAB-JLB<br><br>**Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b) Regarding Judgement**<br><br>Date:    December 2, 2024<br>Judge:   Hon. Cathy Ann Bencivengo<br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

## *Table of Contents*

I. Informal Opening Statement .......................................................... 1

II. Formal Introduction to the Requested Relief .............................. 2

III. Legal Standards for Rule 52(b) and Rule 59(e) ........................ 2

IV. Defendant's Design-Around Does Not Obviate
Infringement and Should Not be Rewarded
with the Current Judgement...................................................... 4

V. Altering the Judgement per Rule 52(b) is
Appropriate Because the Court Made Factual
Findings to Grant Defendant's Summary Judgement Motion .............. 10

VI.  This Court Committed a Clear Error of
Law by Construing the Claimed "Clips" to
be Enclosed by the "Metal Housing" ...................................... 12

VII.  This Court Committed Clear Error of
Law and Fact by Not Viewing the Junction Box
as Part of the Housing per Dependent Claim 5 ...................... 15

VIII.  Conclusion Regarding Relief Sought by Plaintiff................. 17

IX.  Additional Note Regarding Clear Error being
Invited by Defendant ................................................................ 18

*Table of Authorities*

Cases

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
      761 F.3d 1329 (Fed. Cir. 2014) ............................................................12

*Anderson v. Liberty Lobby, Inc.,*
      477 U.S. 242 (1986) ..................................................................................8

*Backlund v. Barnhart,*
      778 F.2d 1386 (9th Cir. 1985) ..................................................................3

*Bot M8 LLC v. Sony Corp.,*
      4 F.4th 1342 (Fed. Cir. 2021)..................................................................20

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,*
      224 F.3d 1308 (Fed. Cir. 2000) ..............................................................15

*DS Advanced v. Cooper et al.,*
      Case 5:23-cv-02603, 43 (C.D. Cal. July 22, 2024) ..................................1

*In re Benno,*
      768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985).....................................17

*Karoun Dairies, Inc. v. Karoun Dairies, Inc.,*
      Civil No. 08-1521-AJB (WVG), 5 (S.D. Cal. Oct. 24, 2014)..................3

*Leading Mfg. Sols., LP v. Hitco, Ltd.,*
      Case No.: 15cv1852-LAB (BGS), (S.D. Cal. Aug. 9, 2019) ...................2

*Living Designs, Inc. v. E.I. Dupont De Nemours Co.,*
      431 F.3d 353 (9th Cir. 2005)...................................................................20

*Phillips v. AWH Corp.,*
      415 F.3d 1303 (Fed. Cir. 2005)...............................................................13

*Powell v. Home Depot U.S.A., Inc.,*
      663 F.3d 1221 (Fed. Cir. 2012) .........................................................16, 17

*Premier Networks, Inc. v. Lucent Technology Inc.,*

No. 99 C 3787, (N.D. Ill. May. 29, 2003) ............................................................13

*Roton Barrier, Inc. v. Stanley Works,*

    79 F.3d 1112 (Fed. Cir. 1996) ......................................................................9

*Smith v. Clark Cnty. Sch. Dist.,*

    727 F.3d 950 (9th Cir. 2013) ......................................................................3

*Trimed, Inc. v. Stryker Corp.,*

    608 F.3d 1333 (Fed. Cir. 2010) ...................................................................20

<u>Statutes</u>

35 U.S.C. § 112 ..................................................................................................13

<u>Rules</u>

37 C.F.R. § 1.29 ....................................................................................................1

Fed. R. Civ. P. § 52(a) ........................................................................................11

Fed. R. Civ. P. § 59(e) ...............................................................................2, 15, 19

Fed. R. Civ. P. §52(b) ...............................................................................2, 15, 18, 19

Patent L.R. 3.1 ..............................................................................................19, 20

<u>Other Authorities</u>

112 Cong. Rec. H4369 (daily ed. June 22, 2011) ...........................................1, 10

MPEP 2163 § I(B) ...............................................................................................17

Plaintiff's Counsel sincerely provides this informal introduction to convince this Court to review the following pages with renewed impartiality and patience.

## *I. Informal Opening Statement*

The Patent asserted in this Case is US Patent 11,054,118 and names David Sherman as the inventor. This Patent was Mr. Sherman's first patent *ever*. See Cummins Decl. at ¶ 6. Mr. Sherman was able to file his patent application as a micro-entity since his gross income is below a threshold value and he had not been named on more than four previously filed non-provisional applications. See *Id*. and 37 C.F.R. § 1.29 (defining micro entity status). This relatively new feature of the US Patent system was established by the America Invents Act of 2012. 112 Cong. Rec. H4369 (daily ed. June 22, 2011) (Rep. Lamar Smith stating: "This bill helps small businesses and inventors by reducing fees for both."). Upon issuance, Mr. Sherman assigned his first patent to his small Canadian business, DS Advanced Enterprises, Ltd., the Plaintiff in this Case.

Starting diligently in 2018, and during the time of his Patent's pendency, Mr. Sherman approached various US retailers in furtherance of having his invention available to consumers. See Doc. No. 70 at pgs. 6-7, and see also Doc. No. 49 at pg. 6. See also, Doc. No. 71-3 ("Sherman Decl.") at ¶ 23. Home Depot admitted to receiving multiple presentations from Mr. Sherman regarding his invention. See Exhibit B (Defendant Home Depot's Answer filed July 22, 2024: "Home Depot admits that Mr. Sherman gave presentations to Home Depot regarding Plaintiff's lighting products on or around April 2, 2019 and August 27, 2019"). See also, *DS Advanced v. Cooper et al*., Case 5:23-cv-02603, 43 at pg. 5, lines 15-16 (C.D. Cal. July 22, 2024).

Plaintiff's Counsel makes this informal but sincere introduction as context for this Motion, which may only be granted if "manifest injustice" or "clear error" would remain

but for this Court's Judgement being amended. [1]  Plaintiff respectfully moves this Court to slightly throttle their rocket docket at this event horizon, and consider this post-judgement Motion with renewed impartiality and patience.

## II.    Formal Introduction to the Requested Relief

Plaintiff respectfully moves this Court per Fed. R. Civ. P. § 52(b) ("Rule 52(b)") to amend and/or make additional findings regarding this Court's Judgement, and/or alter their Judgement per Fed. R. Civ. P. § 59(e) ("Rule 59(e)") by correcting legal errors.

This Motion presents the grounds for granting specific relief to prevent manifest injustice and rectify the clear errors in the Court's decision granting the Defendant's Motion for Summary Judgment of Non-Infringement ("Defendant's Motion"). Initially, this Motion will illustrate how the "David" vs. Goliath nature of this case makes it particularly prone to manifest injustice, especially in the realm of patent infringement in the United States. Subsequently, this Motion will demonstrate how the Defendant's Motion invited the errors apparent in this Court' ruling.  Specifically, after the Court construed the term "metal housing", the Court appeared to rely solely on the *Defendant's* interpretation of the Plaintiff's draft infringement theory from the *Complaint*, rather than considering the Plaintiff's own Patent L.R. 3.1 Infringement Contentions, which were submitted as part of Plaintiff's Opposition Brief and were not included in the Defendant's Motion.

## III.    Legal Standards for Rule 52(b) and Rule 59(e)

"A motion under Rule 52 or 59 is intended to correct manifest errors, or to consider newly discovered evidence or new law." *Leading Mfg. Sols., LP v. Hitco, Ltd.*, Case No.: 15cv1852-LAB (BGS), (S.D. Cal. Aug. 9, 2019).  This District has indicated that a motion under Rule 59(e) "shall be granted if at least one of four circumstances is shown. A court (1) is presented with newly discovered evidence or (2) has committed

---

[1] "Judgement" will be used herein to refer to Doc. No. 67 and any subsequent judgement that is based on Doc. No. 67.

clear error. Additionally, (3) if the initial decision was manifestly unjust, reconsideration is merited." *Karoun Dairies, Inc. v. Karoun Dairies, Inc.*, Civil No. 08-1521-AJB (WVG), 5 (S.D. Cal. Oct. 24, 2014) (internal citations omitted).  In particular "[r]ule 59(e) requires something new and decisive, some blatant injustice, or an obvious error, not substantively identical assertions repeated and repackaged." *Id*. at 5-6 citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).  "Although the Court recognizes that it has discretion to reconsider its own orders at any time before final judgment is entered, *see* Fed. R. Civ. P. 54(b), reconsideration on a party's motion is appropriate only in limited circumstances such as where the Court committed clear error." *Leading Mfg. Sols., LP* at 2 (S.D. Cal. Aug. 9, 2019) citing *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

### IV.    *Defendant's Design-Around Does Not Obviate Infringement and Should Not Be Rewarded with the Current Judgement*

In furtherance of providing additional context for Plaintiff's Patent Claims and Plaintiff's Infringement Contentions, Plaintiff provides the following images of Plaintiff's Covered Products, which were referenced but not included in Plaintiff's Infringement Contentions.  See Doc. No. 45-1 at pg. 73 (listing item numbers from the "Foxsun 2021 Catalog", produced to Defendants as PLNTF100005-PLNTF100017).  Plaintiff entered into a licensing agreement with Foxsun Lighting Co. Ltd ("Foxsun") to sell Plaintiff's Covered Products.  Doc. No. 71-1 at pg. 112 (Agreement between Plaintiff and Foxsun executed on February 5th of 2020[2]).  See also, Mr. Sherman's declaration at Doc. No. 71-3 at pg. 4, ¶ 22.

After executing this Agreement, Plaintiff's Covered Products appeared in the "2021 Foxsun Catalog" and were labeled "Patented".  *Id*. at ¶ 24.  See also, Doc. No. 71-1 at pg. 109 ("3 in 1 Patented" and images of one of the Covered Products).  See also, Exhibit C,

---

[2] The date of execution was 2020, despite the "2021" appearing at the top of the agreement.

attached ("2021 Foxsun Catalog" as produced).   On April 13, 2021, Plaintiff's contact at Foxsun indicated that Lowe's manufacturer, Zhejiang Yankon Mega, purchased Plaintiff's Covered Products.  See Doc. No. 71-1 at pg. 23 (modified) ("April 23, 13, 2021…andy <manager@foxsun.net> wrote:…brother[,] I tell you another two good news…lowes will place smart downlights order 200000pcs…andy"; and "From: 'David Sherman'….Fantastic news!").

Also on April 13, 2021, Andy sent Mr. Sherman the corresponding Lowe's Purchase Orders, which included an Excel version of a purchase order named "PO149907823-1" ("Lowe's POs").  *Id.*   A screenshot of the Lowe's PO is on the record.  *Id.* at pg. 24.  See also, Sherman Decl., Doc. No. 71-3 at pg. 3, ¶¶ 11-25.  Images from the Lowe's PO show Plaintiff's Covered Products.  *Id.*  Defendant refused to cooperate in discovery when Plaintiff sought information on the Lowe's POs, so Plaintiff subpoenaed Lowe's Global Sourcing ("LG Sourcing") of North Carolina for additional information.  LG Sourcing objected, despite Defendant having already produced POs for the Accused Products without issue.  See entities  identified in the confidential Accused Product POs filed under seal by Defendant as Exh. R with Doc. No. 76 (LHC_00180), and confidential sales accounting for the Accused Products filed under seal by Defendants as Exh. O with Doc. No. 76 (LHC_000841).  See LG Sourcing subpoena objection, attached as Exhibit A, and Cummins Decl. at ¶ 5.

What may or may not have been known to Lowe's at the time of the Lowe'sPOs was that Mr. Sherman had presented his Covered Products to Lowe's more than a year earlier, on January 15, 2020.  See Doc. No. 17-1 at pgs. 39-40 (presentation to "Elaine Pellerin" and "Philipe Ciot"), and see Sherman Decl., Doc. No. 71-3 at pg. 3, ¶ 23.  Confidential employment documents for participants to the presentation were filed under seal by Defendant as Exhs. S and T, with Doc. No. 76 (LHC_001802 to 1804).  Plaintiff speculates that Defendant ultimately canceled the April 23, 2021 Lowe's POs because Plaintiff's Covered Products were labeled "Patented".   Lowe's subsequently solicited Zhejiang Yankon for new products, and arguably unbeknownst to Lowe's, Yankon presented

*Plaintiff's* Covered Products, which were ultimately accepted by Lowe's.  See confidential Yankon communications at Exhs. L, M, and N, filed under seal by Defendant for Doc. No. 76.  Defendant's under seal Exh. L corroborates this contention, as it shows images of the same products from the Lowe's PO Plaintiff received from Foxsun.  This makes perfect sense from Plaintiff's perspective because Zhejian Yankon had previously purchased samples of Plaintiff's Covered Products from Foxsun.  See Exh. L, under seal, compared to Doc. No. 71-1 at pg. 22.  See also, Sherman Decl., Doc. No. 71-3 at pg. 3, ¶ 13.

Lowe's under seal documents provide important context for this Motion, and were not available to Plaintiff until well-after Defendant filed their Answer.  Now, with this



Plaintiff's Covered Products from Foxsun Catalog

Patented 3 in 1 LED Narrow Frame Downlight

Plaintiff's Metal Housing

Trim Piece. Visible at ceiling after installation.

The Court construes the "metal housing (108)" limitation of the '118 Patent based on the plain language of the claim and in accordance with the descriptions in the specification and its figures as a "casing or enclosure made of a scientifically recognized metal substance."

Lowe's Accused Products

Unnecessary Wafer Piece that Dr. Bretschneider refers to as the housing

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*

*Honorable Judge Burkhardt*

context, Plaintiff directs this Court to the above diagram comparing (1) this Court's claim construction to (2) Plaintiff's Covered Products and (3) to Lowe's products.

The above diagram compares this Court's claim constructions to Plaintiff's Covered Product shown in the 2021 Foxsun Catalog and also to Lowe's Accused Products. Plaintiff respectfully asks this Court to take a moment to consider the above diagram in view of the claim construction set forth in their Judgement. This Court's discussion of the "metal housing" claim element are excerpted in the diagram on the following page for further comparison to Lowe's Accused Products and Plaintiff's Covered Product.

At the time of filing Plaintiff's Complaint, Plaintiff's Counsel did not have the physical samples of Plaintiff's Covered Products. The physical samples of Plaintiff's Covered Products were received by Plaintiff's Counsel on March 29, 2024, just after Plaintiff served their infringement contentions on March 20, 2024. See Cummins Decl. at ¶ 3. References to Plaintiff's Covered Products were included in their Patent L.R. 3.1 Infringement Contentions, without images of the physical samples. Doc. No. 45-1 at pg. 73, lines 11-24 (excerpted below). Considering Defendant did not even cite to Plaintiff's Patent L.R. 3.1 Infringement Contentions in their Summary Judgement Motion, Plaintiff speculates that Defendant would still not have addressed them even if the images of the physical samples were included. See § VI, *infra*.

The diagram on the following page shows images of the above-identified Covered Product, as received by Plaintiff's Counsel on March 29, 2024 (product on the right). The images were captured in preparation for this Motion. See Cummins Decl. at ¶¶ 3-4. The item number shown on the Covered Product's junction box corresponds to item shown in the images above. This item number is also listed in the 2021 Foxsun Catalog, as shown on the following pages (annotated). See also, Exhibit C, attached.

Retrofit clips (102), another separate component, are attached to the metal housing (108) to provide a friction fit inside a recessed lighting fixture housing to secure the complete fixture (112) inside. [*Id.*, Figs. 7 and 8B.]



Plaintiff's Covered Product

Lowe's Accused Product

of the complete fixture (112), among numerous individually identified components. The specification describes the metal housing (108) as the base of the complete fixture (112). [Patent No. '118, Ex. 34-5, at Col. 4:25-26.]  Different terms are presumed to mean different things. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

The above diagram is also provided as context for this Motion, and also to show how the Court's construction of the "metal housing" reads on Plaintiff's Covered Products *and* on Lowe's Accused Products (*e.g.*, the "metal housing" is the "base on the complete fixture (112)"…[C]lips…are attached to the metal housing.").  The diagram above is further provided to show how Plaintiff's Covered Products and Lowe's Accused Products are nearly identical when the extraneous white wafer piece is removed from Lowe's Accused Products.  Plaintiff contends that Lowe's less-than-innovative attempt to design around Plaintiff's Covered Products still results in infringement of Plaintiff's Patent, at least for keeping (and attempting to hide) the same "metal housing" from Plaintiff's Covered Products.

Plaintiff respectfully asks this Court to reconsider whether a jury could find in favor of Plaintiff regarding infringement, and/or whether these facts viewed in favor of Plaintiff constitute a genuine issue that should have been decided by a jury rather than this Court at summary judgement. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."). If this Court agrees that they committed a clear error by determining this genuine dispute of material fact regarding infringement of the "metal housing" (as construed by this Court), Plaintiff respectfully asks this Court to amend their Judgement to cure this error.

As further context to this Motion, Plaintiff provides the following additional diagram that shows additional views of Plaintiff's Covered Products and the white wafer piece delivered to this Court with Plaintiff's Opposition Brief. Cummins Decl. at ¶ 4.



Trim Piece that is visible at consumer's ceiling after installation.

Design Around Wafer Piece that Dr. Bretschneider refers to as the housing, as provided to Court with Opposition Brief.

1

2

3

Excerpt from Plaintiff's Patent L.R. 3.1 Infringement Contentions

18    **4. Foxsun Light ZF-DL6-12W-DIM-CC-*L#**

4

5

6

7

8

9

10

11

12

13



14    Each of Plaintiff's Covered Products are shipped from Foxsun with the "Patented"

15 label on the junction box and the product number, as shown above.  For the covered product

16 shown in the above diagrams, the product number corresponds to the product number

17 shown in Plaintiff's Patent L.R. 3.1 Infringement Contentions, and in the 2021 Foxsun

18 Catalog, each excerpted and annotated above.  Doc. No. 45-1 at pg. 73, line 18.

19    Plaintiff provides the above diagrams to illuminate some additional context, which

20 this Court did not have before Defendant's Motion, and which may evidence glaring

21 injustice apparent in this Court's Judgement.  Plaintiff also provides this because evidence

22 of copying can be instructive for determining infringement.  *Roton Barrier, Inc. v. Stanley*

23 *Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("[E]vidence of copying or designing around,

24 may also inform the test for infringement under the doctrine.").  See also, date and images

25 from of Defendant's confidential internal presentation at Exhs. J, K, and H, filed under seal

26 with Doc. No. 76, compared to the above 2021 Foxsun Catalog item (also attached as

27 Exhibit C), and compared to Lowe's PO received by Plaintiff from Foxsun (Doc. No. 71-

28 1 at pg. 22) (excerpted below).

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*

*Honorable Judge Burkhardt*

Other evidence of copying includes:

(1) Plaintiff's contractor, Matt Varnell[3], presenting his invention to Brandon Abbott of Lowe's between December 2019 and January 2020. See Defendant's Exhs. B, C, P, and Q, filed under seal; and see Sherman Decl. at Doc. No. 71-3 at pg. 2, ¶¶ 9-10.



(2) Plaintiff's Covered Products appearing in a confidential Lowe's presentation.  See Defendant's Exhs. E, F (last page), J, and K, filed under seal with Doc. No. 76.

(3) Plaintiff's Covered Products appearing in confidential Yankon presentation around October 2021.  See Defendant's Exh. H, under seal with Doc. No. 76.

(4)  Plaintiff's Covered Products being assigned the product numbers that are being accused in this case (Defendant's Exhs. L and M, under seal) to be manufactured by Zhejiang Yankon, who received samples of Plaintiff's Covered Products before interacting with Lowe's.  See Sherman Decl. at Doc. No. 71-3 at pg. 3, ¶ 16.

(5) Other manufactures receiving Plaintiff's Covered Products.  See *Id*. at ¶¶ 14-21.

For at least these reasons, Plaintiff contends that manifest injustice (in the context of patent infringement) can be cured by amending this Court's Judgement.   Plaintiff respectfully asks this Court to indicate the Accused Products include the "metal housing" as construed by this Court, or to indicate that Defendant's Motion for Summary Judgement is denied.  Plaintiff contends that other clear errors are apparent in this Court's Judgement, and those errors are discussed below.

---

[3] Matt Varnell was served a non-party subpoena for documents but never responded or objected.  See Cummins Decl. at ¶ 7.

## V.    *Altering the Judgement per Rule 52(b) is Appropriate Because the Court Made Factual Findings to Grant Defendant's Summary Judgement Motion*

Plaintiff respectfully requests that this Court amend its judgement to make additional findings of fact. Although Fed. R. Civ. P. § 52(a) does not require this Court to "state findings or conclusions when ruling on a motion under Rule 12 or 56", amending the Judgement may promote judicial efficiency for the pending appeal (Doc. No. 72). The Judgement should be amended to provide this Court's rationale for finding no genuine issue of material fact where Plaintiff expressly pointed to a portion of the Accused Products that clearly house a strip of LEDs, which is a part that is *expressly* recited in Plaintiff's Patent as being part of the "complete fixture". See Doc. No. 45-1 at pg. 117, compared to the image at Doc. No. 34-4 at pg. 4 at ¶ 18. In other words, the Parties point to *two different* features of the Accused Products as the "housing" thereby creating a genuine dispute. Defendant points to the extraneous "white wafer" piece, and Plaintiff points to their metal housing that houses the strip of LEDs and dictates the shape of the fixture. For ease of reference, the image below is an excerpt from Plaintiff's Patent L.R. 3.1 Infringement Contentions Brief, as attached to Plaintiff's Opposition to Defendant's Motion for



Summary Judgement.  Doc. No. 45-1 at pg. 117.

As this Court's Judgement acknowledges, "[t]he complete fixtures includes a plurality of electrical systems, clips, accessories", and Plaintiff's Patent expressly recites the "electrical systems include but [are] not limited to the LED driver, an LED PCB assembly, and an *LED strip*." See Doc. No. 34-5 at pg. 10, col. 4:4-6 (emphasis added); and Doc. No. 67 at pg. 5, lines 21-23.  At summary judgment, the Court was required to view the facts in light *most favorable to the non-moving party*, and Plaintiff cannot understand how this requirement was satisfied for this particular portion of the Judgement. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1342 (Fed. Cir. 2014) (modified) ("The district court erred in granting summary judgment to [defendant] because it…failed to make all reasonable inferences supported by the record in favor of [plaintiff] and, instead, resolved disputed factual issues in [defendant's] favor.").

In summary, to the extent that the Court improperly made findings of fact at summary judgment, Plaintiff respectfully requests that the Judgement be amended to reflect those findings.  Otherwise, should the Court agree that clear errors of fact and/or law were made in their Judgement, Plaintiff respectfully requests that this Court amend their judgement to correct those errors.

## VI.  This Court Committed a Clear Error of Law by Construing the Claimed "Clips" to Be Enclosed by the "Metal Housing"

Plaintiff respectfully asserts that this Court committed a clear error of law to the extent that the Court construed Plaintiff's Patent's Claims 1-5 so that the "clips" of the "complete fixture" are *enclosed* by the "metal housing".  Put simply, a construction that indicates the "clips" are enclosed by *any* part of the claimed apparatus is completely erroneous in view of the Claims themselves and all other intrinsic evidence.

As correctly noted by the Court, the "complete fixture" is expressly recited as including the "plurality of electrical systems, *clips*, and accessories".  Doc. No. 67 at pg. 5, lines 22-23 (emphasis added).  Dependent Claim 4 even expressly claims the complete

fixture in this way.  Doc. No. 34-5 at pg. 11, Claim 4.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims").

However, the Judgement erroneously indicates that the claimed apparatus should be construed to have a "metal housing (108)… [that] contains, i.e., *encases*, the complete fixture."  Doc. No. 67 at pg. 6, lines 1-2 (modified).  The Judgement indicates again that the metal housing is "a component that *encases* (*houses*) the parts of the complete fixture" (*Id*. at lines 7-9) (emphasis added); and again that "the housing is disclosed to embody, i.e., encase, the complete fixture and must be formed of metal" (*Id*. at pg. 7, lines 1-2).  And yet—a cursory review of the Figures in Plaintiff's Patent reveals that the clips (102 and 104) are *never* shown as enclosed by *anything* that is part of the claimed apparatus, much less the "metal housing 108".  The Figures from Plaintiff's Patent are reproduced on the following page for quick confirmation of Plaintiff's position on this issue.  See also, Doc. No. 34-5 at pg. 4-8.

A new argument to consider on this front is that the Court's construction gives Plaintiff something *different* than what was set forth in Plaintiff's Patent.  This result is not consistent with purpose of claim construction.  *Premier Networks, Inc. v. Lucent Technology Inc.*, No. 99 C 3787, (N.D. Ill. May. 29, 2003) ("Courts cannot narrow or broaden the scope of a claim to give the patentee something different than what he has set forth.").  Plaintiff's Counsel respectfully asks this Court to consider its claim construction as a hypothetical claim amendment submitted during prosecution.  On that front, had Mr. Sherman attempted to amend the claims to read "the metal housing encloses the clips", any competent Examiner would have rejected that amendment per 35 U.S.C. § 112.









It is important to note that Plaintiff *agrees* with this Court's construction to the extent that the "metal housing" should be construed to "house" parts of the complete fixture. After all, Plaintiff's Covered Products each include a metal housing that houses the LEDs and dictates the shape of the complete fixture. In fact, a simple modification of Plaintiff's proposed construction arrives at this Court's construction: "a metal <u>housing</u> ~~structure~~ (108) that <u>is a constituent part of</u> ~~includes~~ a complete fixture (112) ~~as a constituent part~~". Doc. No. 42-2 at pg. 3 (modified for comparing with this Court's construction of the same phrase). See also, Judgment at pg. 6, lines 15-16 ("the metal housing (108) is a component of the complete fixture (112), among numerous individually identified components."). Although Plaintiff's construction briefs were admittedly a bit long-winded, part of their purpose was to avoid the term "embody" being construed to mean "house", since the result would be an erroneous claim scope in which the "clips" are enclosed by the "metal housing".

As a new argument on this issue, Plaintiff asserts that the term "housing" and "embody" are different terms that are presumed to mean different things, unless the intrinsic evidence indicates otherwise. See Judgment, Doc. No. 67 at pg. 6, lines 18-20 citing *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("Different terms are presumed to mean different things."). Despite quoting this precedent, the Court erroneously construed "embody" to mean the *same* thing as "housing", without considering the precedent or the issues it would create with the "clips" of the "complete fixture". See Doc. No. 67 at pg. 7, lines 1-2 ("the housing is disclosed to embody, i.e., encase, the complete fixture").

For at least these reasons, Plaintiff respectfully asks this Court to amend their Judgement to correct any errors of law regarding claim construction Plaintiff's Patent Claims 1-5 per Rules 52(b) or 59(e). Should this Court decline to find any errors of law, Plaintiff's respectfully asks this Court to amend the Judgement to include their rationale for construing the "metal housing" to enclose the "clips" of Claims 1 and 4 of Plaintiff's Patent.

**VII. This Court Committed Clear Error of Law and Fact by Not Viewing the Junction Box as Part of the Housing per Dependent Claim 5**

Plaintiff contends that a genuine issue of material fact existed with the respect to whether the "junction box" as claimed can be considered part of the "complete fixture"; and the Court committed a clear error of law by resolving this dispute at summary judgment. Plaintiff's Counsel was expressly asked at the summary judgment hearing to explain whether there is a disputed fact. Doc. No. 69 at pg. 8, line 18, to pg. 9, line 18. Plaintiff's Counsel replied by explaining that the "metal Frisbee-looking portion, with the LED strip enclosed within it" is the portion of the Accused Products Plaintiff is pointing to as the metal housing, along with "the junction box [that] also provides the housing…because it includes the ground wires and connectors". *Id.* The Court went on to state that "the junction box is a separate component of the complete fixture [and] is not tradable with the metal housing." *Id.* (modified). Plaintiff's Counsel then attempted to distinguish the *Becton* case, which Court seemed to be alluding to, with the *Home Depot* case, which the Federal Circuit indicated is *not* contrary to *Becton*. See *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2012) (modified) ("*Becton* is not to the contrary… Here, the disclosure in the *specification cuts against* Home Depot's argument that the 'cutting box' and 'dust collection structure' must be *separate* components… [The disclosure] does not suggest that the claim terms require separate structures."). While Plaintiff's Counsel's oration at the hearing could have been clearer, the point and precedent are no less important.

The Claims themselves support the contention that the junction box can be part of the metal housing because: (1) Claim 5 recites "the junction box (116) allows an *LED driver* to be installed", (2) Claim 4 defines the complete fixture as including "a plurality of electrical systems", and (3) the Specification expressly states that the "electrical systems include but [are] not limited to the *LED driver*". See Doc. No. 34-5 at pg. 11, Claims 4 and 5 (emphasis added). See also, *Id.* at pg. 10, Col. 4:5-6 (modified). In other words, the

LED driver is part of the claimed "complete fixture" and Claim 5 recites the LED driver as being installed inside the junction box. Nonetheless, the Court did not seem to be aware of, or be willing to acknowledge, the Federal Circuit case *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2012), which was addressed in Plaintiff's responsive claim construction brief. Doc. No. 52 at pg. 13, line 18 to pg. 15, line 14 (Plaintiff's responsive claim construction brief discussing *Powell v. Home Depot U.S.A., Inc.*). Plaintiff's assertions regarding the junction box being included with the metal housing represented a genuine issue of material fact that should not have been decided by this Court at summary judgement.

As a new argument that should be considered per Rule 52(b) and/or Rule 59(e), Plaintiff asserts that the as-filed claims of a patent can represent their own embodiment, and are part of the specification at the time of filing. See MPEP 2163 § I(B) citing *In re Benno*, 768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985) ("The claims as filed in the original specification are part of the disclosure and, therefore, if an application as originally filed contains a claim disclosing material not found in the remainder of the specification, the applicant may amend the specification to include the claimed subject matter). Here, Plaintiff's Patent was filed by Mr. Sherman and originally included Claim 5 as reciting: "wherein the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires." Doc. No. 45-1 at pg. 40 (Claim 5). The provisional application also supports Claim 5 by stating "An LED driver would be installed inside the junction box (8)" and including the image to the right labeled "housing". Doc. No. 45-1 at pg. 46. Hence, when viewing these facts in light most favorable to Plaintiff, the claimed embodiment contemplates the junction box being part of the housing because it encases the LED driver, which



is expressly claimed as part of the complete fixture that this Court construed as being "encased" by the "metal housing".

For at least these reasons, Plaintiff respectfully asks this Court to amend its judgement per Rules 59(e) and/or 52(b), at least with respect to the claim construction of the "metal housing (108) to embody a complete fixture (112)". Plaintiff contends that clear errors were made in constructing this claim phrase, and that relief in the form of an amended Judgement is warranted. Although Plaintiff contends that new arguments are not necessary for this Court to correct those errors, Plaintiff provided the new arguments above as additional clarification regarding the alleged errors. Furthermore, Plaintiff contends that correcting the claim construction in this way, and viewing the context of Plaintiff's Covered Products, should warrant reversing this Court's Judgement of non-infringement, and having the issue of infringement decided by a jury.

## VIII.  Conclusion Regarding Relief Sought by Plaintiff

Pursuant to 59(e) and 52(b), Plaintiff asks this Court to correct, and/or provide their rationale for, many of the conclusions set forth in their Judgement. In particular, Plaintiff respectfully requests the following relief:

1. Plaintiff moves this Court per Fed. R. Civ. P. §52(b) to impartially consider whether the appropriate standard for summary judgement was applied before granting Defendant's Motion for Summary Judgement of Non-Infringement.
2. Plaintiff moves this Court per Fed. R. Civ. P. §52(b) to impartially reconsider whether the *facts* supporting this Court's claim construction of "a metal housing (108) to embody a complete fixture (112)" were viewed in light most favorable to Plaintiff.
3. Plaintiff moves this Court per Fed. R. Civ. P. §52(b) to impartially reconsider whether *facts* supporting the Accused Products infringing *this Court's* construction of "metal housing" were viewed in light most favorable to Plaintiff.
4. Should this Court determine that factual findings were made and/or that genuine issues of material facts were decided, Plaintiff respectfully asks this Court to amend their

Judgment per Fed. R. Civ. P. §52(b).

5. Plaintiff respectfully asks this Court to amend its Judgment per Fed. R. Civ. P. §59(e) in view of the additional context provided herein for Plaintiff's Covered Products, and in the interest of avoiding manifest injustice that may result from this Court's Judgement.

6. Plaintiff respectfully asks this Court to amend its Judgment per Fed. R. Civ. P. §59(e) to provide its rationale for construing the "metal housing" to "encase" the "complete fixture", including the "clips", and/or amend their Judgement to obviate this issue from further appeal or litigation.

7. Additionally, Plaintiff respectfully asks this Court to amend its Judgement per Fed. R. Civ. P. § 59(e) and provide its rationale for concluding that the metal housing portion of the Accused Products that *Plaintiff* points to does not infringe *this Court's* construction of "metal housing", and/or amend their Judgement to obviate this issue from further appeal.

### IX.  *Additional Note Regarding Clear Error being Invited by Defendant*

Plaintiff suspects that Defendant's focus on the infringement theories set forth in the Complaint snowballed into this Court making many of the errors set forth herein. Defendant intentionally filed their motion for summary judgment without citing Plaintiff's Patent L.R. 3.1 Infringement Contentions, or even attaching them.  Instead, Defendant focused their entire summary judgment motion on many arguments and images that were not even included in Plaintiff's Patent L.R. 3.1 Infringement Contentions.

Despite Defendant constantly promoting a theory that Plaintiff's infringement theories were "ever changing", *Plaintiff never amended their Patent L.R. 3.1 Infringement Contentions* after they were served on May 20, 2024 per this Court's scheduling order, Doc. No. 31, and per Patent L.R. 3.1.

In executing this negligent strategy, Defendant directed this Court to Plaintiff's

underdeveloped infringement theory in the Complaint, instead of addressing the finalized infringement contentions Defendant had been served with weeks prior.  As a result, it appears this Court did just that.  This Court's Judgement cites to Plaintiff's Opposition Brief one time (Doc. No. 45), Plaintiff's Complaint two times, and Plaintiff's Patent L.R. 3.1 Infringement Contentions *zero* times (Doc. No. 45-1, pgs. 70-138).  See *Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1344 (Fed. Cir. 2010) ("The district court has now been reversed twice after entering summary judgment against TriMed, in both instances simply signing Stryker's proposed statement of law and facts relevant to the decided issues, a disfavored practice in the Ninth Circuit, see *Living Designs, Inc. v. E.I. Dupont De Nemours Co.*, 431 F.3d 353, 373 (9th Cir. 2005) (noting that the Ninth Circuit has criticized district courts that engaged in the 'regrettable practice' of adopting the findings drafted by the prevailing party whole-sale.")

Admittedly, the infringement theories in the original complaint were not completely developed.  But the Federal Circuit has repeatedly emphasized that infringement theories are *not* required to be fully developed at the pleading stage. *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342 (Fed. Cir. 2021) ("Once more, we explain that patentees need not prove their case at the pleading stage").  As a strategy, it makes no sense to focus on the pleadings when you've been served Infringement Contentions per Patent Local Rule 3.1.  That rule requires "A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality", whereas initial complaints are not held to such a heightened standard for pleading an infringement theory.

Defendant's evasive strategy convinced this Court to issue summary judgment on theories of infringement from Plaintiff's *Complaint*, instead of addressing the finalized infringement theory Plaintiff served on Defendant per Patent L.R. 3.1.  Plaintiff's Counsel speculates that Defendant invited error by focusing on the underdeveloped infringement theories set forth in the Complaint, thereby leading this Court to assume no genuine disputes of material fact existed.

Dated: October 28, 2024

*/s/ Patrick D. Cummins*,

Patrick D. Cummins

Cummins IP Law PLLC

3426 Pepperhill Rd.

Lexington, KY 40502

Telephone: (502) 445-9800

Patrick@CumminsIP.com

*Attorney for Plaintiff,*

   *DS Advanced Enterprises, Ltd.*