PETER S. DOODY (Bar No. 127653)
Doody@higgslaw.wcom
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone: (619) 236-1551
Facsimile: (619) 696-1410

SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
SILLS CUMMIS & GROSS P.C.
101 Park Avenue
New York, NY 10178
Telephone: (212) 643-7000

Attorneys for Defendant LOWE'S HOME CENTERS, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a corporation,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, a Corporation,<br><br>Defendants. | Case No. 3:23-cv-01335-CAB-JLB<br><br>**REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES**<br><br>Date: December 4, 2024<br><br>Judge: The Honorable Cathy Ann Bencivengo<br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

Defendant Lowe's Home Centers, LLC ("LHC") submits this Reply Memorandum of Law in Support of its Motion for Attorneys' Fees and Expenses, pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927. LHC's summary judgment motion and its moving brief demonstrated the fundamental defects that permeate the Plaintiff's infringement theories in this case. Such defects alone would entitle LHC

to the award of attorneys' fees sought herein, but are further bolstered by Plaintiff's shifting infringement analyses, duplicative litigation, and protective order violations.

In response, Plaintiff attempts to rewrite the history of its infringement theories and to justify its bad faith litigation conduct. In so arguing, Plaintiff flouts a central premise of this request – this was an entirely baseless patent infringement action that no claim construction could ever save. Plaintiff's meritless infringement case coupled with its ineffectual litigation tactics fully warrant the imposition of attorneys' fees and costs.

## I. CORRECTING PLAINTIFF'S LEGAL ERRORS

Plaintiff makes the following legal errors, briefly corrected here:

(1) Plaintiff alleges that LHC must prove the exceptional nature of the case by clear and convincing evidence. Dkt. #81 (Plaintiff's Brief in Opposition to LHC's Motion for Attorney's Fees ("Op. Br.") at 2. This standard was overruled by the Supreme Court ten years ago – the burden is only a preponderance of the evidence. *Octane Fitness, LLC v. ICO Health & Fitness, Inc.,* 134 S. Ct. 1749, 1758 (2014).

(2) Plaintiff argues that LHC waived its right to attorney fees by filing this motion more than 14 days after "entry of final judgment." Op. Br. at 2, 21–22. But this Court expressly ordered that no "final judgment" will be entered until after a pending sanctions motion is decided – indeed, there is still no "final judgment" in this case. Dkt. #67, at 8. If there is any doubt, this Court entered an Order on October 15, 2024, stating that "LHC may file a motion for an exceptional case determination pursuant to 35 U.S.C. § 285 no later than fourteen (14) days after entry of final judgment." Dkt. #74.[1]

---

[1] Plaintiff erroneously states that "Defendant had asked Plaintiff to agree to an extension of time to file Lowe's Motion for Attorney's Fees." Op. Br. at 21. LHC did not request that Plaintiff agree to an extension of time to file its attorneys' fees motion. Exhibit N, referenced by Plaintiff as the basis for such an argument (*id*.), contained LHC's attempt to obtain consent to LHC's Motion Pursuant to Rule 58(e), which sought an extension of time to file a notice of appeal (not an extension of time to file this attorneys' fees application) (Dkt. #81-1, at 24–26).

(3) Plaintiff argues that its infringement allegations are justified because LHC did not move to dismiss those claims, and that LHC therefore somehow "waived" its fee request. Op. Br. at 1, 19. But motions to dismiss have procedural hurdles not present in summary judgment motions, and it is not appropriate to address claim construction in connection with a motion to dismiss. So, summary judgment was the better option.

## II.   PLAINTIFF'S FRIVOLOUS INFRINGEMENT ALLEGATIONS

### A.   Metal Housing

As this Court determined, Plaintiff's infringement allegations ignored the plain meaning of the claim, and proposed a claim construction that was "almost frivolous." Dkt. #83-4, at 6:1–5. No matter how many different arguments Plaintiff makes, it cannot escape the plain meaning of the claim – the LHC plastic housing cannot be a metal housing.

Plaintiff alleges that it never changed its infringement contentions about the metal housing. Op. Br. at 4. This argument does not address the primary point – no matter how few or many times Plaintiff changed course, it does not justify Plaintiff alleging infringement in view of the plain claim language "metal housing" and the undeniably plastic LHC housing. And, Plaintiff did change course, many times. *Compare, e.g.,* the following:

- Original Complaint, Dkt. #1, at ¶ 31, only showing a disassembled LHC product, without specifically identifying any part as the housing;

- The Amended Complaint, Dkt. #17, at ¶ 83 and Ex. 29, here adding a new "elemental analysis" to argue that the white wafer plastic housing has trace amounts of metal;

- Plaintiff's Infringement Contentions, relevant pages attached to the Reply Declaration of Katherine M. Lieb, dated November 20, 2024 ("Lieb Decl."), Ex. K, here identifying various components collectively as the metal housing, including

clips, and internal structures, and arguing that the housing and complete fixture "overlap in scope"; and

- Plaintiff's Opposition to Summary Judgment, Dkt. #45 at 5, 7, and 25–26, here abandoning the elemental analysis and indeed any reliance on the "white wafer" shown in the complaints and the Infringement Contentions (*e.g.*, page 26: "Plaintiff's primary infringement contentions do not rely on the white wafer piece") and instead arguing that any "metal structure" can be the housing, and that the housing was composed of a collection of various metal parts including the clips, the electrical systems, the junction box, the wiring, and the PCB.

Indeed, in its opposition and its recent Motion to Amend the Judgment, Plaintiff adds yet another new argument, suggesting that a comparison of the Accused Product to the Plaintiff's product could somehow save its infringement allegations. Dkt. #79-1 at 3–10 (*e.g.*, page 7: "Plaintiff's Covered Products and Lowe's Accused Products are nearly identical when the extraneous white wafer piece is removed from Lowe's Accused Products."); *see also* Op. Br. at 5 (LHC housing "is essentially the same metal housing of Plaintiff's Covered Products").

As the above shows, virtually every time counsel for LHC confronted Plaintiff about its frivolous infringement position, they were met with a new and different argument. And with Plaintiff's brand-new comparison of LHC's product to the Plaintiff's product (a product that Plaintiff has never even shown to be covered by the patent), that pattern continues. These ever-changing analyses are solid grounds for an award of fees. *Amazon Web Servs. v. Personalweb Techs., LLC*, 2020 U.S. Dist. LEXIS 186226, at *75 (N.D. Cal. Oct. 6, 2020) (awarding fees where plaintiff "repeatedly flip flopped its positions to suit the argument of the day"); *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479, 2023 U.S. Dist. LEXIS 19000, at *31–32 (S.D. Cal. Feb. 3, 2023) (fees in part due to "ever-changing theories of infringement.").

/ / /

### B. Twist Connector

Plaintiff attempts to convince the Court that it did not change its position on this element, too. But nowhere does Plaintiff even address its original proposed construction in its Preliminary Claim Construction Worksheet. Dkt. #77-7 (Stimpson Decl., Ex. E), at 10 ("a connector that relies on the act of twisting *to make a connection*"). Plaintiff never explains why it later, in opposing summary judgment, dropped the requirement of "twisting *to make a connection*" or why it changed the focus of the "twisting" from a requirement "*to make a connection*" to only being a requirement that the connector attach *twisted parts*. Dkt. #45, at 23 (twist connector refers "to something that connects two or more things that were formed by twisting . . .").

Like its new metal housing infringement argument (comparing the LHC product to the Plaintiff's product), Plaintiff makes new infringement arguments here, too. Specifically, Plaintiff argues for the first time that Figure 7 of the patent somehow supports its construction just because wires enter from opposite ends. Op. Br. at 8–9. This argument has never been made before – as with the metal housing element, LHC and its counsel are faced with ever-changing infringement analyses.

### C. Plurality of Wires

LHC's Opening Brief, at pages 9–10, informed this Court that Plaintiff's Amended Complaint added a new and completely frivolous argument about the required plurality of wires, and later abandoned that argument. Dkt. #77, at 9–10. Specifically, in the Amended Complaint, Plaintiff showed a stripped single wire of the LHC products, arguing the internal copper strands were the required plurality of wires. These are undeniable facts. *See* Dkt. #17, at pages 18–19 of 45. It is also undisputed that Plaintiff abandoned these arguments in opposing summary judgment. *See* Dkt. #45, at 14–18, 29–30.

/ / /

/ / /

### III. PLAINTIFF ABUSED THE LITIGATION PROCESS

Plaintiff asserts that the law does not punish a plaintiff who mistakenly names a defendant and then corrects the mistake. Op. Br. at 13–14. LHC agrees. But this is not a case of a plaintiff that merely named the wrong defendant. This is a case of a plaintiff that, without any basis whatsoever, sued *four* separate Lowe's entities, in *three separate cases*, in *two different jurisdictions*, all on this *same patent*. Plaintiff does not cite any case analogous to this situation, because there is no such case.

Plaintiff's attempts to justify these numerous litigations and suing these various defendants fall flat.

- As for Lowe's Companies, Plaintiff alleges that an employee of Lowe's Companies (Brandon Abbott) received a presentation from Plaintiff, and he "was believed to have assisted with procuring pirated versions of Plaintiff's Covered Products." *Id*. at 15. These alleged justifications, however, provide no evidence of Lowe's Companies making, using, or selling anything. Indeed, Mr. Abbott is not even mentioned in the Original Complaint (Dkt. #1) -- these arguments are only Plaintiff's post-hoc effort to justify its misconduct.

- As for LG Sourcing Shanghai, Plaintiff alleges that, in another case years ago, conversations were had with the "Lowe's Shanghai team." Op. Br. at 16. Plaintiff then makes the quantum leap that LG Shanghai imported the accused products in *this* case. *Id*. Not only is this allegation utterly frivolous on its own, but on the very next page of its brief, Plaintiff admits that "LG Sourcing [North Carolina] is believed to be the buyer and importer of the Accused Products" (*id*. at 17) – a different company than LG Sourcing Shanghai. *See* Dkt. #77-8 (Stimpson Decl., Ex. F), ¶ 4 (LG Sourcing Shanghai is "a Chinese company").

- As for LF, Plaintiff points to the packaging of the accused products. Op. at 17–18. But the packaging notes only that the designs and trademarks are owned by LF, and it also expressly states that the distribution of the products is by LHC. *See* Dkt. #81-1, at 16 (Plaintiff's Exhibit J).

Higgs Fletcher & Mack LLP

12773112 v3

Thus, Plaintiff ignores the elephant on the table: if not to drive up expense and burden on Lowe's, why did Plaintiff sue four different Lowe's entities, in three separate cases, in two different jurisdictions, all on this same patent? Why did Plaintiff bring two different litigations, in two different jurisdictions, against two different defendants (LHC and Lowe's Shanghai), accusing the exact same products of infringing the same patent? To the extent that Plaintiff had any doubts about the potential involvement of other Lowe's corporate entities, Plaintiff could have served a simple interrogatory asking for an identification of any other Lowe's corporate entities involved with the accused products, or simply asked counsel for LHC. Plaintiff's decision to instead bring additional lawsuits against these entities only served to drive up burden and cost.[2]

## IV. PLAINTIFF'S PROTECTIVE ORDER VIOLATIONS

Plaintiff does not dispute that it showed its CEO, David Sherman, LHC's highly confidential actual and projected sales, costs, and profit information. Nor does it dispute that Plaintiff's counsel tried to mislead LHC's counsel by claiming that the documents themselves had not been shown to the CEO, and by falsely claiming that there had been no Protective Order violation. Dkt. #77-10 (Stimpson Decl., Ex. H) ("I have not shown my client any of the 'counsel only' documents you produced . . . I believe I'm complying with the counsel only requests."). Such misconduct is another basis for fees awards. *See* Dkt. #77, at 12–13.

---

[2] For the Court's information, Plaintiff has continued its obstructionist and costly litigation tactics upon losing on summary judgment. In the Federal Circuit, Plaintiff has not only opposed LHC's motion to dismiss for lack of jurisdiction for lack of a final judgment, but has further sought to vacate LHC's alternative request to deactivate the appeal in light of Plaintiff's pending motion for reconsideration pursuant to Rules 52 and 59 (*see* Document 13 filed with the Federal Circuit Case Number 25-1072 on November 1, 2024). Plaintiff's position – that the appeal should proceed notwithstanding the motion pursuant to Rules 52 and 59 – wholly contradicts the plain language of Fed. R. App. P. 4. Moreover, Plaintiff's Docketing Statement in the Federal Circuit indicated that Plaintiff intends to request the extraordinary relief of Your Honor's removal from this case upon remand (*see* Document 5 filed with the Federal Circuit Case Number 25-1072 on October 19, 2024). Plaintiff's obstructionist tactics only serve to drive up further expense and cost in this case.

## V. CONCLUSION

For all the foregoing reasons, LHC respectfully requests that the Court find this case exceptional and award fees and expenses under 35 U.S.C. § 285, 35 U.S.C. § 1927, and/or the Court's inherent authority. LHC further requests that the Court set a briefing schedule on the amount of appropriate fees to be awarded (*see* Dkt. #74, setting procedures on LHC's attorneys' fees application).

Dated: November 20, 2024      Respectfully submitted,

HIGGS FLETCHER & MACK LLP

By: */s/ Peter S. Doody*
PETER S. DOODY

SILLS CUMMIS & GROSS P.C.
Scott D. Stimpson (Pro Hac Vice)
Katherine M. Lieb (Pro Hac Vice)
Linxuan Yan (Pro Hac Vice)

*Attorneys for Defendant LOWE'S HOME CENTERS, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on November 20, 2024, to all counsel of record, who are deemed to have consented to electronic service via the Court's CM/ECF system. I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

*/s/ Peter S. Doody*

Peter S. Doody

12773112 v3