UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC., et al.,<br><br>Defendants. | Case No.: 23-cv-01335-CAB-JLB<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO ENFORCE THE PROTECTIVE ORDER AND FOR SANCTIONS**<br><br>**(ECF No. 59)** |

This Report and Recommendation is submitted to the Honorable Cathy Ann Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On September 9, 2024, Defendant Lowe's Homes Centers, LLC ("LHC") filed a Motion to Enforce the Protective Order and for Sanctions pursuant to Federal Rule of Civil Procedure 37(b). (ECF Nos. 59 (redacted); 98 (sealed).) LHC moves for an order enforcing the Protective Order issued in this case and sanctioning Plaintiff DS Advanced Enterprises, Ltd. ("Plaintiff"). (*Id.* at 1–2.) Plaintiff filed an opposition. (ECF No. 71.)

LHC filed a reply. (ECF No. 75.) For the reasons set forth below, the Court **RECOMMENDS** that LHC's Motion to Enforce the Protective Order and for Sanctions be granted in part.

## I. BACKGROUND

### A. Factual Background

Plaintiff commenced this lawsuit against multiple entities on July 21, 2023, alleging infringement of U.S. Patent No. 11,054,118 ('118 Patent). (ECF No. 1.) In its First Amended Complaint ("FAC"), Plaintiff alleges infringement of the '118 Patent solely against LHC. (*See* FAC, ECF No. 17.)

Plaintiff identifies itself as a designer and seller of lighting fixtures worldwide. (*Id.* ¶ 13.) Plaintiff claims to be the owner of all right, title, and interest in the '118 Patent. (*Id.* ¶¶ 16, 123.) The Patent discloses "an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing." (Patent No. '118, ECF No. 34-5 at 2.)

Plaintiff alleges in the FAC that LHC sold "pirated lighting products" in its stores and on its websites and thereby infringed Plaintiff's Patent in violation of 35 U.S.C. § 271. (FAC ¶¶ 69–72, 124.) The accused LHC products are recessed lighting products designated as Utilitech Items #5041630, #5041631, #5041632, #5041633, and #5041634. (*Id.* ¶¶ 75–110.)

On June 10, 2024, LHC filed a motion for summary judgment of noninfringement asking the Court to grant summary judgment of non-infringement and dismiss the case in its entirety. (ECF No. 34.) On September 30, 2024, the Honorable Cathy Ann Bencivengo granted LHC's motion and vacated all pending motions and deadlines, except for the present motion. (ECF No. 67.) On October 10, 2024, Plaintiff filed a Notice of Appeal to the Federal Circuit. (ECF No. 72.)

### B. Discovery

As discovery commenced in this matter, the parties filed a Joint Motion for Protective Order. (ECF No. 32.) The Joint Motion was granted, and the operative Protective Order was entered on March 21, 2024. (ECF No. 33.) In the stipulated

Protective Order, the parties agree "to be bound by the terms" of the Protective Order, which permits parties to designate information as "CONFIDENTIAL – FOR COUNSEL ONLY" ("C-FCO") only if, "in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development, financial or other commercial information." (*Id.* at 1–3.) Information designated C-FCO may be viewed only by counsel of the receiving party (as defined by the parties in the stipulated Protective Order), and by identified persons under designated conditions. (*Id.* ¶¶ 4–12.) In order to receive and review information designated as CONFIDENTIAL, Plaintiff's President, David Sherman, signed a copy of Exhibit A to the Protective Order which bound him to the Protective Order's provisions. (*See id.* at ¶ 10, Ex. A; *see also* Declaration of David Sherman ("Sherman Decl."), ECF No. 71-2 ¶¶ 3–8.)

On April 4, 2024, LHC produced two documents, LHC_000795–812 and LHC_000841–887, which were responsive to Plaintiff's Requests for Production of Documents. (ECF No. 59-1 at 4, 6.) These documents disclosed, among other things, LHC's sales, costs, and profit information, and internal proposals for products that would compete with Plaintiff's products, along with estimated sales and profit margins for those products. (*Id.*) Specifically, LHC_000795-812 is an internal presentation containing diagrams of certain proposed products. (*Id.* at 6.) The final page of the presentation, LHC_000812, contains a diagram of one of those products, as well as an estimate of total sales and expected gross margin percentage. (*Id.*) LHC_000841–887 is an excel spreadsheet containing detailed sales, costs, and profit data for LHC's products, from July 2022 through March 2024, including gross revenue, net revenue, costs of goods sold, total units sold, and net margins, among other things. (*Id.*) Both documents were designated C-FCO by LHC pursuant to the Protective Order. (*Id.* at 4.)

On July 19, 2024, Plaintiff served supplemental interrogatory responses ("First Supplemental Response"), verified by Mr. Sherman, on LHC. (ECF No. 59-1 at 6–7; *see also* Declaration of Patrick Cummins ("Cummins Decl."), ECF No. 71-4 ¶ 11.) The

responses addressed commercial success, citing LHC_000841 for evidence of units sold by LHC of the Accused Products since 2022, as well as gross revenue and net profit. (ECF No. 98 at 84.) The responses also addressed both evidence of copying, which involved reproducing an image from LHC_000795, and skepticism, citing LHC_000812. (*Id.* at 4–7.)

On July 29, 2024, LHC raised concerns with Plaintiff regarding what sales information had been disclosed to Mr. Sherman when he reviewed and verified the First Supplemental Response. (Cummins Decl. ¶ 16.) On August 1, 2024, Plaintiff's counsel spoke with Mr. Sherman to address LHC's concerns. (*Id.* ¶ 18.) Mr. Sherman recounted in his declaration that he had printed a single copy of the First Supplemental Response, but he had not discussed or otherwise shared any information from the First Supplemental Response with anyone other than Plaintiff's counsel. (Sherman Decl. ¶¶ 11–12, 17.) Mr. Sherman agreed to mail his single printed copy of the First Supplemental Response to counsel and remove any digital copies from his possession. (*Id.* ¶¶ 13–15, 27.)

On August 1, 2024, Plaintiff's counsel served a second supplemental interrogatory response ("Second Supplemental Response"), verified by Mr. Sherman, on LHC. (Cummins Decl. ¶ 22.) The next day, LHC's counsel raised concerns regarding images and exhibits in the Second Supplemental Response, which it claimed had also been in the First Supplemental Response. (*Id.* ¶ 24.) Plaintiff's counsel apologized for including certain exhibits in the interrogatory responses. (*Id.* ¶ 25.) He claimed to have "mistakenly attached certain exhibits assuming they were part of an email thread that was already in Plaintiff's possession prior to the initiation" of the present lawsuit. (*Id.*) That same day, Plaintiff's counsel contacted Mr. Sherman regarding LHC's latest concerns and had him mail the single copy he had printed of the Second Supplemental Response back to counsel and confirm he did not have any other copies and had not discussed the Second Supplemental Response with anyone. (*Id.* ¶¶ 26–28.) Mr. Sherman mailed his single printed copy of the Second Supplemental Response back to counsel, confirmed he did not

have another other copies, and agreed to sign an affidavit addressing LHC's concerns. (Sherman Decl. ¶¶ 20–27.)

On August 3, 2024, Plaintiff served both a redacted and unredacted third supplemental interrogatory response on LHC to address its confidentiality concerns. (Cummins Decl. ¶ 36.)

## II. LEGAL STANDARDS

Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26. Fed. R. Civ. P. 37(b)(2); *see Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-CV-01846-LHK-PSG, 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014); *Life Techs. Corp. v. Biosearch Techs.*, Inc., No. C-12-00852 WHA JCS, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012).

Rule 37 "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986). "The choice among the various sanctions rests within the discretion of the district court." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). However, the court's authority to issue sanctions "is subject to certain limitations[.]" *Nat'l Med. Enters., Inc.*, 792 F.2d at 910. Specifically: "(1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." *Id.* Furthermore, a compensatory award is limited to the "actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983). And where the sanction amounts to dismissal of a claim, the district court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith," and the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citation omitted). "Disobedient conduct not shown to be outside the litigant's control" meets the standard of willfulness, bad faith or fault. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006) (citations omitted).

## III. DISCUSSION

### A. Parties' Arguments

LHC contends that Plaintiff's counsel improperly disclosed information and images contained in documents identified as C-FCO to Plaintiff's President, a competitor, in violation of the Protective Order. (ECF Nos. 59-1 at 4; 75 at 5.) LHC contends that these documents reveal sensitive sales, costs, and profit data, and proposals for competing products with associated product margins. (ECF No. 59-1 at 4.) Furthermore, LHC complains that, when Plaintiff's counsel was first asked if C-FCO documents or their substance had been disclosed, Plaintiff's counsel failed to reveal the disclosure, responding, instead, "I believe I'm complying with the counsel only requests." (*Id.* at 9.) LHC contends that, after inquiries, Plaintiff admitted that it had disclosed this information. (*Id.* at 4.) LHC seeks serious sanctions to remedy the harm caused by the improper disclosure and to deter Plaintiff and others from such violations in the future. (*Id.* at 4–5.)

Specifically, LHC seeks attorney's fees and costs incurred as result of Plaintiff's violation of the Protective Order. (ECF No. 59-1 at 9.) LHC also asks the Court to preclude Plaintiff "from alleging commercial success, copying, or skepticism for any purpose in this litigation." (*Id.* at 11.) If the Court prefers a lesser sanction, then LHC proposes the Court preclude Plaintiff from "using LHC_000795-812 or LHC_000841 to assert commercial success, copying, or skepticism for any purpose in this litigation (limiting the sanction to these two documents only)." (*Id.* at 12.)

In response, Plaintiff does not dispute that Mr. Sherman reviewed unredacted versions of the supplemental interrogatory responses at issue. (*See* ECF No. 71 at 4–12; Cummins Decl. ¶¶ 9–28.) Rather, Plaintiff contends, with respect to both the supplemental interrogatory responses, that LHC was not prejudiced and, with respect to the Second Supplemental Response, that the C-FCO material LHC complains about should not have been so designated because Plaintiff had independent knowledge of the information. (*See* ECF No. 71 at 5–6, 9–11, 15–16.) Plaintiff further contends that Mr. Sherman only reviewed an unredacted version of the supplemental interrogatory responses at issue

through Plaintiff's counsel's mistake and outlines the steps Plaintiff took to rectify the mistake. (*Id.* at 4–9.) Mr. Sherman specifically states in affidavits that he did not discuss or otherwise share any information contained in the supplemental interrogatory responses that he reviewed with anyone. (Sherman Decl. ¶¶ 12, 17, 24; Second David Sherman Declaration ("Second Sherman Decl."), ECF No. 71-3 at ¶ 4.) Mr. Sherman also states that he returned all copies of the supplemental interrogatory responses he may have downloaded or printed to his counsel. (Sherman Decl. ¶¶ 14–15, 22–23, 26–27; Second Sherman Decl. ¶¶ 5–6.)

Plaintiff further argues that Plaintiff is hardly a competitor of Defendant like Amazon or Home Depot. (ECF No. 71 at 9–10.) In this regard, Mr. Sherman explicitly states that he does not own or operate retail stores, does not have any employees, and does not compete with LHC. (Second Sherman Decl. ¶¶ 7–9.) However, Mr. Sherman also states that he has purchased lights from manufacturers and resold them to other vendors for profit. (*Id.* ¶ 15.)

Overall, Plaintiff argues the Court should deny LHC's request for sanctions because LHC has failed to provide evidence of great harm caused by the purported violation or evidence of bad faith or willful conduct. (ECF No. 71 at 12–18.)

**B.    Analysis**

    1.    <u>Violation of the Protective Order</u>

There is no dispute that Plaintiff's counsel violated the Protective Order issued in this case. As discussed above, he disclosed to his client C-FCO information and images on not one, but *two*, separate occasions, despite having been advised of the violation after the first occasion. Although the issue of whether or not the material was properly designated in the first place may go to the issue of the harm suffered by LHC, it is not a defense to the violations of the Protective Order. There were procedures available to Plaintiff to challenge improper designations. (*See* ECF No. 33 at ¶ 14.) It should go without saying that a party who receives discovery subject to a protective order may not

unilaterally decide not to comply with the protective order because that party has decided the material was improvidently designated as confidential.

The question now is one of remedy.

### 2. Remedy for Violations

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), when there is a failure to abide by a protective order, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, the Court finds that counsel's violation of the Protective Order was not substantially justified. Plaintiff's counsel's actions may have been a mistake, but counsel was still careless with LHC's sensitive information. *See Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA JCS, 2012 WL 1600393, at *9 (N.D. Cal. May 7, 2012) (noting that "in patent cases, it is critical that outside counsel handle the opposing party's confidential information with the utmost caution"). Furthermore, when asked directly whether C-FCO material had been shared with Mr. Sherman, Plaintiff's counsel did not give the inquiry careful consideration, but instead initially asserted that he was handling C-FCO material properly. (*See* ECF No. 59-7 at 2–5.) After being alerted to LHC's concern about the First Supplemental Response, Plaintiff's counsel should have taken extra care with respect to C-FCO material when preparing the Second Supplemental Response. He did not.

However, the Court finds that there are mitigating circumstances that make a full award of expenses unjust. First, after his initial deflection, Plaintiff's counsel took substantial steps to minimize any harm and to provide LHC with evidentiary support that Mr. Sherman no longer had access to C-FCO material, that he did not recall the substance of what he had seen, and that he had not shared the information with anyone else. In addition, LHC argues that it has been prejudiced, but it has not convincingly demonstrated significant prejudice. LHC contends that Plaintiff is a competitor and Mr. Sherman can utilize the limited information he was given to compete with LHC in selling light fixtures.

(*See* ECF No. 59-1 at 10.)  The Court does not find these arguments persuasive.  First, Mr. Sherman is the sole employee of Plaintiff and does not own any retail stores.  Second, LHC_000841–887, is a 47-page excel spreadsheet containing detailed sales, costs, and profit data for LHC's products, from July 2022 through March 2024, including gross revenue, net revenue, costs of goods sold, total units sold, and net margins, among other things.  However, Mr. Sherman did not receive or review this spreadsheet.  The interrogatory reviewed by Mr. Sherman identified only three numbers—total units sold of the Accused Products since 2022, the gross revenue, and reported net profit. (ECF No. 98 at 84.)  The extent to which Mr. Sherman can recall and then utilize these three numbers to compete with and harm LHC is unclear, but it strikes the Court as purely speculative.[1] Moreover, the interrogatory reviewed by Mr. Sherman which contains a partial image from LHC_000812, only contains estimates from a "PROMO" presentation, not actual sales figures.  (*See id.* at 86–88.)

      Taking all of this into consideration, the Court finds that Plaintiff's counsel should, within limits, pay the reasonable expenses, including attorney's fees, incurred by LHC as a result of his violation of the Protective Order with respect to the First Supplemental Response and Second Supplemental Response.  *See Cahill v. Nike, Inc.*, No. 3:18-CV-01477-JR, 2024 WL 3963809, at *6 (D. Or. Aug. 26, 2024) (finding counsel liable for reasonable attorney's fees where counsel disclosed confidential information subject to a protective order to a news organization although the disclosure was not deliberate or done in bad faith).

      The Court has not been persuaded that Plaintiff should be precluded from alleging commercial success, copying, or skepticism for any purpose in this litigation, or that

---

[1] Mr. Sherman stated in his declaration that he does not recall any of LHC's sales data that was revealed when he reviewed and signed the First Supplemental Response, except that he believes he remembers "the number of significant digits of gross revenue for [LHC's] sales of the Accused Products."  (ECF No. 71-3 at 4.)

Plaintiff should be precluded from using LHC_000795–812 or LHC_000841–887, or any of the information contained in these documents, to assert commercial success, copying, or skepticism in this litigation. First, there was nothing improper about the underlying production or retention of the documents. They were not, for example, inadvertently produced privileged documents that were improperly retained by Plaintiff. Thus, there would be no remedial purpose to the evidence preclusion. LHC is simply seeking to punish and therefore deter Plaintiff and others from protective order violations in the future. (*See* ECF No. 59-1 at 5.)

"Rule 37(b) sanctions may serve . . . *punitive and deterrent purposes*," *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983) (emphasis added), but "the sanction must specifically relate to the particular claim at issue in the order," *Nat'l Med. Enters., Inc.*, 792 F.2d at 910. *See, e.g.*, *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA JCS, 2012 WL 1600393, at *11 (N.D. Cal. May 7, 2012) (barring attorney who disclosed attorney's eyes only documents to his client from further access to attorney's eyes only documents). Here, the Court finds that LHC has not demonstrated that the proposed remedy is sufficiently related to the violation at issue such that evidence preclusion is appropriate. Plaintiff utilized the relevant documents when attempting to support secondary considerations of non-obviousness in responding to LHC's interrogatories, specifically commercial success, copying, and skepticism. (*See* ECF No. 59-1 at 5, 11.) However, wholesale preclusion of the argument or use of the documents is too attenuated and would not be a just penalty given the circumstances discussed below, where the Court does not find bad faith or prejudice.

As discussed above, although Plaintiff's counsel was careless with LHC's confidential information, there is nothing in the record before the Court to suggest that Plaintiff itself acted willfully or in bad faith. Plaintiff's President simply reviewed the information provided to him and signed the interrogatory responses he was asked to sign. (Sherman Decl. ¶¶ 9–30.) Mr. Sherman only briefly retained the C-FCO information at issue before returning or deleting all copies, and did not share the information with anyone

besides Plaintiff's counsel. (*Id.*) Moreover, there is nothing in the record before the Court to suggest Plaintiff's counsel acted willfully or in bad faith. Preclusion of evidence can be a severe sanction, which is generally only imposed to deter "flagrant disobedience and callous disregard of court discovery orders." *See Sumitomo Marine*, 617 F.2d at 1369–70. Here, LHC has not established that Plaintiff or Plaintiff's counsel flagrantly disobeyed or callously disregarded the Protective Order.

Lastly, "[w]hen a court excludes evidence under Rule 37, the court should do so only where there is a finding of prejudice to the nonoffending party." *Life Techs. Corp.*, 2012 WL 1600393, at *11. As addressed above, LHC argues that it has been prejudiced, but it has not demonstrated that it has suffered such prejudice as to warrant the harsh sanction of evidence preclusion.

For the foregoing reasons, the Court finds that the appropriate remedy for Plaintiff's counsel's violation of the Protective Order is ordering counsel to pay, within limits, the reasonable expenses, including attorney's fees, incurred by LHC as a result of his violation of the Protective Order with respect to the First Supplemental Response and Second Supplemental Response. *See Apple, Inc.*, 2014 WL 12596470, at *10 (finding that assessing outside counsel as liable for any and all costs and fees incurred in litigating a motion for sanctions, in addition to public findings of wrongdoing, to be sufficient to remedy the harm of repeated protective order violations and discourage similar conduct in the future).

### 3. Reasonable Attorney's Fees

As LHC did not substantiate its fee request in its Motion to Enforce the Protective Order and for Sanctions, the Court ordered LHC to file a supplemental declaration in support of its motion specifying the amount of attorney's fees and costs sought and attaching all supporting documentation. (ECF No. 91.) In its supplemental declaration, LHC states that it is seeking $41,448.11 in attorney's fees and expenses incurred by its counsel, Sills Cummis & Gross P.C. ("Sills Cummis"), as result of Plaintiff's violations of the Protective Order. (Suppl. Decl. of Scott D. Stimpson ("Stimpson Decl."), ECF No. 93

¶ 2.)[2] This amount includes a client discount of 15% on Sills Cummis's standard billing rate. (*Id.* ¶ 14.)

LHC is generally entitled to all "reasonable expenses" caused by Plaintiff's counsel's violation of the Protective Order. *See* Fed. R. Civ. P. 37(b)(2)(C). Reasonable attorney fees are calculated based on the lodestar method, which requires the court to "multiply[] the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995); *see also Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 115 (S.D. Cal. 2024).

The party seeking fees bears the burden of demonstrating that its counsel's hourly rates are reasonable and in line with prevailing rates in the relevant legal community of the Southern District of California. *See Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724, at *2 (S.D. Cal. Feb. 5, 2021). To do so, the party must produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate.").

In calculating the number of reasonable hours to include in the lodestar, the court should consider "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Billing records may establish the reasonableness of the requested number of hours. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The court will exclude any hours

---

[2] LHC represents that any monetary award in this case will go toward reimbursement of the fees spent by Yankon Lighting due to its indemnification obligations. (Stimpson Decl. ¶ 6.)

"that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted); *see also Cruz*, 346 F.R.D. at 117. The court has "a great deal of discretion in determining the reasonableness of the fee[,]" including "the reasonableness of the hours claimed by the prevailing party." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

LHC represents that four attorneys worked on the Motion to Enforce the Protective Order and for Sanctions: (1) Scott Stimpson, a member of Sills Cummis's litigation department and Chair of its Intellectual Property Practice Group, with over 35 years of experience in intellectual property litigation and counselling, with an hourly billing rate of $925; (2) Randy Moonan, a member of Sills Cummis's litigation department with over 11 years of experience representing clients in complex high-stakes litigation and in sensitive regulatory and internal investigations, with an hourly billing rate of $825; (3) Laura Krawczyk, counsel in Sills Cummis's litigation department, with almost 20 years of experience handling intellectual property litigation, with an hourly billing rate of $675; and (4) Sean Camperson, an associate in Sills Cummis's litigation department, with 2 years of experience handling commercial litigation disputes, with an hourly billing rate of $450. (Stimpson Decl. ¶¶ 9–12.)

In its briefing, LHC has not demonstrated—or attempted to demonstrate—that its counsel's hourly rates are reasonable and in line with prevailing rates in the relevant legal community of the Southern District of California. However, the Court finds that counsel's hourly rates, as discounted, are reasonable in this District. *See CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479-GPC (DEB), 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (finding reasonable undiscounted hourly rates for a partner up to $1,465, for associates up to $805, and for paralegals up to $495 in patent litigation); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 3:18-CV-347-CAB-MDD, 2020 WL 6876300, at *2–3 (S.D. Cal. Mar. 20, 2020) (finding a Winston & Strawn partner's billing rate of $1,005 per hour and other attorneys' rates of $860 and $885 per hour "consistent with the prevailing market rates for complex patent litigation in this district"); *Orthopaedic Hosp. v. Encore Med.,*

*L.P.*, No. 3:19-cv-00970-JLS-AHG, 2021 WL 5449041, at *13–15 (S.D. Cal. Nov. 19, 2021) (finding reasonable in a complex, high-stakes patent litigation a Quinn Emanuel partner's billing rate of up to $1,260 and a fifth-year associate hourly rate of up to $1,065, but acknowledging a client discount that worked out to an average hourly rate of $709.63). Here, incorporating its client discount, Sills Cummis billed an average hourly rate of $632.80 for its work on this patent litigation. The Court finds that rate reasonable in this District.

The Court has reviewed the invoices provided by LHC in detail. The Court finds that only time entries that specifically reflect research, drafting, and review of the Motion to Enforce the Protective Order and for Sanctions are reasonably awarded in this case. The Court will exclude all time spent meeting and conferring, reviewing emails, and communicating with clients, opposing counsel, and within the firm. In this regard, the Court finds that Mr. Stimpson's time sheets reflect that he spent 9.3 hours reviewing and revising the motion,[3] Ms. Krawczyk spent 13.3 hours researching and drafting the motion, Mr. Moonan spent 22.6 hours drafting and finalizing the motion, including declarations and exhibits, and the reply,[4] and Mr. Camperson spent 11.2 hours conducting research. The Court will not question Sills Cummis's decision to have Mr. Moonan, a senior counsel, do the majority of drafting in this case, as he may have been more efficient with his time than a junior associate. However, the Court finds that LHC has not endeavored to justify the reasonableness or efficiency of having multiple people draft the motion. Accordingly, the Court finds it appropriate to cut Ms. Krawczyk's hours entirely. For the foregoing reasons, the Court finds that LHC has established reasonable expenses in the amount of $27,444.38.

---

[3] The Court is not including Mr. Stimpson's hours on July 31, August 3, August 5, August 27, September 3 (conference), September 5, October 7 (correspondence), October 10, and October 15.

[4] The Court is not including Mr. Moonan's hours on September 3.

However, Rule 37(b)(2)(C) also directs the Court to consider whether "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, the Court further considers the relative financial positions of the parties, the lack of evidence of intentionality, the remediation efforts undertaken by Plaintiff's counsel, and the lack of persuasive evidence of harm to LHC and determines that an appropriate sanction under these circumstances should not exceed $25,000. Accordingly, the Court finds a total fee award of $25,000 to be reasonable and just.

## IV. CONCLUSION

For the reasons set forth above, the Court the Court **RECOMMENDS** that LHC's Motion to Enforce the Protective Order and for Sanctions be **GRANTED IN PART** such that Plaintiff's counsel be ordered to pay the reasonable expenses, including attorney's fees, in the amount of $25,000, caused by his violation of the Protective Order with respect to the First Supplemental Response and Second Supplemental Response. However, the Court recommends that all other forms of relief requested by LHC be denied.

**IT IS HEREBY ORDERED** that no later than **January 31, 2025**, each party shall file either a "Notice of Intent to File Objections" or a "Notice of Intent Not to File Objections." If a party has timely noticed its intent to object, any written objections to this Report and Recommendation shall be filed with the Court and served on all parties no later than **February 7, 2025**. The document should be captioned "Objections to Report and Recommendation."

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449,445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated:  January 24, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge